**HEARTLAND HOLDINGS, INC., Appellant**

v.

**U.S. TRUST COMPANY OF TEXAS N.A. and U.S. Trust Corporation, Appellees.**

No. 14–08–00232–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 8, 2010.

Rehearing Overruled July 15, 2010.

Howard L. Nations, Mark E. Dykes, Houston, for appellant.

Curt M. Langley, Nancy Wells Hamilton, Charles L. Babcock, C. Elaine Howard, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and SULLIVAN.

## OPINION

ADELE HEDGES, Chief Justice.

Heartland Holdings, Inc. ("HHI") appeals from the trial court's grant of a plea to the jurisdiction and, in the alternative, motion for summary judgment filed by appellees', U.S. Trust Company of Texas, N.A. and U.S. Trust Corporation (collectively "U.S. Trust"). HHI sued U.S. Trust for alleged violations of trustee duties under various, related, municipal bond indentures. In its plea/motion, U.S. Trust asserted, among other things, that HHI did not have the right to sue under the indentures because it was not listed by name on the bond register established pursuant to the indentures. On appeal, HHI contends principally that (1) in order to sue on the bonds, it was not required to be listed by name on the bond register; (2) the legal doctrines of issue preclusion and judicial estoppel bar U.S. Trust from arguing to the contrary in the present action; (3) even if being listed by name in the register was required, HHI has now fulfilled that requirement; (4) the trial court erred in refusing to permit HHI to amend its pleadings after HHI became listed by name on the bond register; and (5) the court erred in dismissing HHI's claims "with prejudice." We affirm.

## I. Background

The municipal bonds forming the basis of HHI's lawsuit were issued between 1996 and 1999 for the purpose of financing, acquiring, or renovating several individual healthcare facilities. Certain inter-related entities, deemed the "Heritage entities" by the parties, were to be the recipients of the bond proceeds for the stated purposes.

The agreements under which the bonds were issued were referred to as the bond indentures. The parties to each of the indentures were the bond trustee and the Heritage entity slated to receive the proceeds. U.S. Trust was the original trustee on each of the bonds and continued in this capacity until 2001.[1] Ultimately, all of the bonds subject of this lawsuit went into default.

HHI purchased the bonds on the secondary market in 2002. HHI held the bonds in "street name," meaning that while HHI was the beneficial owner of the bonds (*i.e.,* entitled to sell and receive disbursements), the bonds were physically held by a depository firm, the Depository Trust Company ("DTC"), and were registered in the name of DTC's nominee, "Cede & Co." HHI obtained beneficial ownership of the bonds through an assignment from the State of Wisconsin Investment Board ("SWIB"). SWIB, in turn, had obtained the bonds from certain municipal bond funds that had been offered by Heartland Group, Inc. and managed by Heartland Advisors, Inc.

In 2001, a receiver appointed to oversee the "Heartland Funds" filed suit against U.S. Trust in federal court. The case was subsequently transferred to the United States District Court for the Central District of California. In that lawsuit, the Heartland Receiver alleged, among other things, that U.S. Trust had violated the terms of the bond indentures by improperly disbursing bond proceeds to various Heritage entities. U.S. Trust defended that lawsuit, in part, by asserting that the Heartland Receiver was not entitled to sue to enforce terms of the indentures because the Heartland Funds no longer owned the bonds. Based on this argument, the district court granted partial summary judgment favoring U.S. Trust.

After purchasing the bonds in 2002, HHI filed the present lawsuit against U.S. Trust.[2] HHI alleged that U.S. Trust had violated the terms of the indentures by improperly releasing bond proceeds to the Heritage entities and by failing to adequately notify bondholders regarding the Heritage entities' alleged misuse of bond proceeds. In 2006, U.S. Trust filed a number of dispositive motions, including multiple pleas to the jurisdiction and motions for summary judgment. On October 17, 2006, the trial court granted one of U.S. Trust's pleas to the jurisdiction; the court subsequently granted HHI's motion to reconsider, thus vacating its order of dismissal.[3] On November 30, 2007, with the court's permission, U.S. Trust filed a "Restated and Supplemental Plea to the Jurisdiction and, in the Alternative, Motion for Summary Judgment." In that pleading, U.S. Trust argued that HHI was not entitled to sue for enforcement of the bond indenture because it was neither a party to, nor an intended third-party beneficiary of, the indenture.

In response to U.S. Trust's dispositive pleading, HHI principally argued that as an owner of the bonds at issue, it was

---

1. U.S. Trust Company of Texas was originally designated as the trustee. U.S. Trust Corporation was the parent of U.S. Trust Company of Texas.

2. Over the course of the litigation, various additional plaintiffs and defendants have been named in the pleadings. The parties currently involved in the litigation are as described in this opinion.

3. Because the bases of the trial court's prior rulings, both granting the plea to the jurisdiction and granting the motion to reconsider, are not essential to the disposition of the issues presented in this appeal, we will not examine them in detail.

**6**

entitled to sue for enforcement. In support of their respective arguments, both parties pointed to the same sections of the indentures, section 1.01 and section 1.10. Although there are some minor differences in the language from indenture to indenture, the indentures all read substantially as follows:

SECTION 1.01 *Definitions.*

For all purposes of this Indenture, except as otherwise expressly provided or unless the context otherwise requires:

A. The terms defined in [Article One] have the meanings assigned to them in this Article. . . .

"Owner" or "Holder", [sic] when used with respect to any Bond, means the Person in whose name such Bond is registered in the Bond Register.[4]

. . . .

SECTION 1.10 *Benefits of Indenture.*

Nothing in this Indenture or in the Bonds, express or implied, shall give to any Person, other than the parties hereto, their successors hereunder, the Corporation, any separate trustee or co-trustee appointed under Section 9.12, and the Owners of Outstanding Bonds any benefit or any legal or equitable right, remedy, or claim under this Indenture.

HHI contended that as a bond owner, it was entitled to sue to enforce the indentures pursuant to section 1.10. U.S. Trust contended that because HHI's name did not appear on the bond register as owner of the bonds in question, as required by section 1.01, HHI cannot sue as an "Owner" under section 1.10. It is undisputed that at the time U.S. Trust's plea/motion came to be heard, the bond register listed DTC's nominee, Cede & Co., as owner of

the bonds. The trial court granted U.S. Trust's plea/motion and ordered the case dismissed "with prejudice."

Several months after this ruling, HHI filed a "Motion to Modify, Correct, Reform, or, In The Alternative, Vacate." In this motion, HHI asserted that subsequent to the court's ruling, bond certificates had been issued establishing HHI as the direct owner of the bonds. HHI further asserted that its name had been added to the bond register as owner of the bonds. On these bases, HHI requested that it be allowed to move forward with its cause of action. The trial court denied HHI's motion, and this appeal ensued.

In six issues on appeal, HHI contends that (1) to sue under the indentures, it was not required to be listed by name on the bond register; (2) based on positions taken in the federal lawsuit in California, U.S. Trust is barred from arguing that HHI does not own the bonds; (3) because HHI is now listed in its own name on the bond register, its claims should be permitted to go forward; (4) the trial court erred in refusing to permit HHI to amend its pleadings to reflect the change in the bond register; (5) the court erred in dismissing HHI's claims "with prejudice"; and (6) the trial court erred if it granted summary judgment on any grounds U.S. Trust raised in prior motions. We will begin our analysis by addressing the parties' arguments concerning whether HHI was entitled to sue to enforce the bond indentures.

## II. Standards of Review

As stated, the trial court granted U.S. Trust's plea to the jurisdiction and, in the alternative, motion for summary judgment without stating the grounds therefor. We have previously explained that while

4. The maintenance of a "bond register" for the registration of bonds and bond transfers is required under section 3.07 of the indentures.

the question of whether a party is entitled to sue on a contract is often informally referred to as a question of "standing," it is not truly a standing issue because it does not affect the jurisdiction of the court; it is, instead, a decision on the merits. *See Yasuda Fire & Marine Ins. Co. of Am. v. Criaco,* 225 S.W.3d 894, 898 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (citing *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–54 (Tex.1999), et al.). When it is established that a breach of contract plaintiff lacks entitlement to sue on a contract, the proper disposition may be summary judgment on the merits, but it is not dismissal for want of jurisdiction. *See id.* Accordingly, we consider the trial court's grant of U.S. Trust's dual-purpose motion under the standards governing summary judgments instead of the standards governing pleas to the jurisdiction.

U.S. Trust's motion is in the manner of a traditional motion for summary judgment. We analyze the grant of a traditional motion under well-established standards of review. *See generally* Tex. R. Civ. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). The movant bears the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). We review the motion and the evidence de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005).

■ Generally, in order to enforce a contract, a litigant must be either a party to that contract or an intended third-party beneficiary. *See Wells v. Dotson,* 261 S.W.3d 275, 284 (Tex.App.-Tyler 2008, no pet.); *Yasuda Fire,* 225 S.W.3d at 898.

Here, HHI makes no assertion that it is a party to the indentures. Indeed, the indentures themselves demonstrate that the only parties were the bond trustee and the particular Heritage entity associated with the particular bond issuance. There is a presumption against conferring third-party beneficiary status on noncontracting parties. *S. Tex. Water Auth. v. Lomas,* 223 S.W.3d 304, 306 (Tex.2007). In determining whether a third party may enforce provisions of a contract between others, the intent of the contracting parties controls. *Id.* The intent to confer a direct benefit upon a third party must be clearly and fully spelled out before a third party can enforce the contract. *Id.* As will be discussed in greater detail below, the contracts at issue here, the indentures, explicitly spell out the third-party beneficiaries entitled to sue for enforcement.

■ In construing a contract, our primary concern is to ascertain the parties' intent as expressed in the instrument. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex. 2006). To ascertain those intentions, we examine the entire contract in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *Id.* No single provision should be given controlling effect, but all provisions must be construed in reference to the whole. *Id.* When a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex.2003). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex. 1996).

### III. The Meaning of "Owner"[5]

In its first issue, HHI contends that as an owner of the bonds in question, it is entitled to sue to enforce the bond indentures. Therefore, according to HHI, the trial court erred in holding that it was not entitled to sue under the indentures. More specifically, HHI asserts that (1) its ownership of the bonds in street name fulfilled the ownership requirements of section 1.01 of the indentures; (2) in the alternative, the definition provided in section 1.01 does not apply in the context of this case; and (3) also in the alternative, the definition contained in section 1.01 is not a material provision of the agreement. We will consider each argument in turn.

HHI first argues that the definition of "Owner" contained in section 1.01 does not require that the owner's actual name appear in the bond register. Or, stately conversely, HHI argues that when a "placeholder's" name appears in the register in place of the beneficial owner's name, the beneficial owner should still be considered the "Owner" under section 1.01. As set forth above, section 1.01 defines "Owner" as "the Person in whose name such Bond is registered in the Bond Register." We do not agree with HHI's interpretation that the provision allows for entities other than those whose names appear in the register to hold the rights of "Owners" under the indentures. To the contrary, a more direct interpretation of this passage would be that for purposes of the indentures, the "Owner" of a particular bond is the entity whose name is listed for that bond in the register. Had the drafters of the indentures desired for the outcome sought by HHI, *i.e.,* that all beneficial owners would have rights thereunder regardless of whether listed on the register, they could have done so in a straightforward fashion. For example, they could have said that the "Owner" of a bond was "the beneficial owner" or "the person *for whom* the bond is registered." Instead, Section 1.01 clearly permits only parties whose names appear on the bond register to be considered "Owners."[6]

HHI additionally argues that the definition in section 1.01 does not apply in the context of this case. It bases this argu-

---

5. As set forth above, the indentures in question defined the terms "Owner" and "Holder" synonymously. For clarity and ease of reference, our analysis will utilize only the term "Owner," although it applies equally to the term "Holder."

6. At least two other courts considering similar language in bond indentures have come to like conclusions. In *Theodore v. TD Ameritrade, Inc.,* the plaintiff complained that he did not receive notice of an early redemption when the indenture required such notice "to each Holder of Securities." No. 11760-07, 18 Misc.3d 1134(A), 2008 WL 465281, at *2 (N.Y.Sup.Ct. Feb. 11, 2008). The indenture defined "Holder" as "the person in whose name a Security is registered on the Registrar's books." *Id.* Interpreting the language as "plain and unambiguous," the court concluded that the definition of "Holder" did not include beneficial owners who held bonds in street name. *Id.* at *2–3. The court further noted that this interpretation was supported by a publication of the Securities and Exchange Commission, which advised investors that registration in street name meant that a bond was "registered in the name of your brokerage firm on the issuer's books." *Id.* at *2 (quoting but not citing publication). The plaintiff in *Raymond James & Associates v. The Bank of New York Trust Co.,* also alleged that it failed to receive proper notice as required under the applicable indenture. No. 8:07–CV–239–T–27TBM, 2008 WL 4279629, at *1 (M.D.Fla. Sept. 18, 2008). The plaintiff specifically contended that it was an intended third-party beneficiary entitled to notice. *Id.* at * 2, 7–8. The court concluded, however, that only "holders" of the notes were granted such rights in the indenture, and the holder of the plaintiff's notes was "Cede & Co.," as DTC nominee; the plaintiff was merely the certificate owner. *Id.* at *8.

ment primarily on the opening words of the section, which state that the definitions contained therein apply "except as otherwise expressly provided or unless the context otherwise requires." According to HHI, the definition of "Owner" in section 1.01 should not apply in the context of section 1.10. However, section 1.10, which defines who has rights to enforce the indentures and who does not, appears to be the very context for which the definition contained in section 1.01 was intended. Both sections discuss ownership of the bonds governed by the indentures.

Nevertheless, HHI further argues that in the greater context of bond ownership, the requirements of section 1.01 do not make sense. HHI cites *Caso–Bercht v. Striker Industries*, 147 S.W.3d 460 (Tex. App.-Corpus Christi 2004, no pet.), for the proposition that a large percentage of bond ownership is, like HHI's ownership was here, in street name. According to HHI, applying section 1.01 to prevent beneficial owners, who do not also hold the bond certificates or have their own name listed in the bond register, from asserting rights under the indentures would bar the majority of beneficial owners from being able to assert their rights.[7] HHI is putting the cart before the horse. The rights that are granted in a particular contract to third parties are up to the parties to the contract to decide. *See generally MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999) ("In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling."). The parties are free to give third parties rights or not give them rights. *See id.* The parties are specifically free to determine whether a third party is vested with authority to sue for enforcement of the contract. *See EPGT Tex. Pipeline, L.P. v. Harris County Flood Control Dist.*, 176 S.W.3d 330, 340 (Tex.App.-Houston [1st Dist.] 2004, pet. dism'd). The degree to which bond ownership in street name is common practice does not prevent parties to indentures from either granting or denying owners in street name the right to sue to enforce the indentures. In a situation such as this, a purchaser of bonds is charged with knowledge of the contents of any controlling indenture. It is elemental that the buyer who is not a party to the agreement is not in a position to dictate the terms of the contract.

▅▅▅ Lastly, HHI contends that because section 1.01 is not a material provision of the agreement, it should be disregarded. "[U]nder Texas law, essential or material terms are those that parties would reasonably regard as vitally important elements of their bargain." *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (citing *Neeley v. Bankers Trust Co.*, 757 F.2d 621, 628 (5th Cir. 1985)). We are unpersuaded. Whether and under what circumstances a third party may sue to enforce an agreement would appear to be a highly material issue in any given contract. HHI maintains that by permitting owners not listed in their own names in the register to sue would not increase U.S. Trust's potential liability.

7. While the court in *Caso–Bercht* discussed that street name ownership of bonds is commonplace, the opinion does not support HHI's larger proposition that because such ownership is so commonplace, the parties to the indentures could not agree to exclude ownership of this type from rights under the contract. 147 S.W.3d 460. In *Caso–Bercht*, the issue before the court was whether the plaintiffs had standing and capacity to bring certain statutory and common law causes of action. The case did not involve either a breach of contract cause of action or the need to interpret a contractual definition of "owner."

The extent of U.S. Trust's potential liability is not the issue; contract interpretation is. HHI furthers insists that at any given time, U.S. Trust could have found out who all the beneficial owners were by merely making a few phone calls. We decline to rewrite the contract in order to impose additional burdens respecting third parties. *See generally MCI*, 995 S.W.2d at 651. Having rejected each of HHI's arguments regarding the interpretation of sections 1.01 and 1.10, we overrule its first issue.

## IV. Issue Preclusion and Judicial Estoppel

### A. The Law

■ In its second issue, HHI contends that under the legal doctrines of issue preclusion and judicial estoppel, U.S. Trust was barred from arguing that HHI was not an owner of the bonds. HHI premises its arguments on positions U.S. Trust took in a prior lawsuit in a California federal court. "Issue preclusion ... bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). We consider the preclusive effect of a federal-court judgment pursuant to federal common law. *Id.* When the federal court in question sat in diversity jurisdiction, we look to the state law utilized by the federal court. *Id.* at 2171 n. 4. The prior judgment at issue here was rendered by a federal court sitting in diversity jurisdiction and utilizing Wisconsin law. *See In re Heritage Bond Litigation*, No. 02–ML–1475 DT, 2004 WL 1638201 (C.D. Cal. July 6, 2004 order granting partial summary judgment). Wisconsin courts look to "principles of fundamental fairness" in considering whether issue preclusion should apply in a particular case. *Michelle T. v. Crozier*, 173 Wis.2d 681, 495 N.W.2d 327, 331 (1993).[8] As a preliminary matter, Wisconsin courts analyze whether the issue presented in the current litigation is "in substance the same" as an issue resolved in a prior proceeding. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis.2d 210, 594 N.W.2d 370, 376 (1999). It must also be assessed whether the issue in question was "actually and necessarily determined" in the prior proceeding. *Id.* at 374 (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).

■ When applicable, "[t]he doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.

8. The *Michelle T.* court identified the following "fundamental fairness" factors to be considered by courts before applying issue preclusion:
 (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?
 495 N.W.2d at 330–31.

8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000).[9] It "is an equitable doctrine invoked by a court at its discretion." *New Hampshire*, 532 U.S. at 750, 121 S.Ct. 1808. Consequently, the circumstances under which judicial estoppel may properly be applied "are not reducible to any general formulation of principle." *Id.* Nonetheless, courts have identified several factors to consider when determining whether to apply the doctrine, including: (1) whether the party's subsequent position is "clearly inconsistent" with its prior position; (2) whether the party successfully persuaded the prior court to accept the position in question, such that it would appear "either the first or the second court was misled"; and (3) whether the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51, 121 S.Ct. 1808.

### B. The Facts

In support of its arguments under both doctrines, HHI introduced portions of the record from a federal district court proceeding in California: *In re Heritage Bond Litigation*, No. 02–ML–1475 DT (C.D. Cal. transferred August 20, 2002).[10] In that litigation, a receiver appointed to oversee the "Heartland Funds," a group of related municipal bond funds, sued U.S. Trust for alleged violations of the same bond indentures at issue in the present case. U.S. Trust filed a motion for partial summary judgment asserting that the Heartland Receiver was not entitled to sue to enforce the indentures because the Heartland Funds no longer owned the bonds in question. Specifically, U.S. Trust maintained that the Heartland Funds had transferred ownership of the bonds to the State of Wisconsin Investment Board ("SWIB") and that SWIB in turn had transferred the bonds to HHI. The district court granted partial summary judgment favoring U.S. Trust. *In re Heritage*, No. 02–ML–1475 DT (C.D. Cal. July 6, 2004 order granting partial summary judgment).

In the present case, HHI specifically contends that (1) positions taken by U.S. Trust in the motion, (2) statements made by U.S. Trust's counsel in a declaration in support of the motion, and (3) the district court's granting of the motion, all support application of the doctrines of issue preclusion and judicial estoppel in the present case. In the motion, U.S. Trust asserted that when the Heartland Funds sold the bonds to SWIB, they transferred whatever rights they "may have had by reason of the trust indentures"; thus, according to U.S. Trust, having sold the bonds, the Heartland Funds (and by extension the

---

**9.** When considering a judicial estoppel claim, Texas Courts have looked to the law governing the previous proceeding, explaining that "the primary purpose of judicial estoppel is to preserve the integrity of the prior judicial proceeding." *Dallas Sales Co. v. Carlisle Silver Co.*, 134 S.W.3d 928, 931 (Tex.App.-Waco 2004, pet. denied) (collecting cases, including *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 841 (Tex.App.-Houston [14th Dist.] 2000, pet. denied)). As discussed above, the prior proceeding here was in federal court. Somewhat paradoxically, federal courts, for the most part, apply the law governing the subsequent proceeding, explaining that doing so enables the court to protect itself from manipulation. *See Rissetto v. Plumbers and Steamfitters Local*

343, 94 F.3d 597, 602–04 (9th Cir.1996); *see also G–I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3rd Cir.2009) (collecting cases). Because precedent dictates that we apply federal law in this context, we will apply federal principles of judicial estoppel in this case. It does appear, however, to be an area ripe for Texas Supreme Court consideration.

**10.** The action began in the Northern District of Illinois but was transferred to the Central District of California pursuant to a multidistrict litigation order. *In re Heritage*, No. 02–ML–1475 DT (C.D. Cal. July 6, 2004 order granting partial summary judgment).

Heartland Receiver) could not have had any remaining right to sue premised on ownership of the bonds. In support of this contention, U.S. Trust cited to language in the sales agreement, the bonds, and the indentures, as well as to common law rules governing sales of securities. U.S. Trust also cited to the language of section 1.10 of the indentures, wherein it states that "[n]othing in this Indenture or in the Bonds, express or implied, shall give to any Person, other that the parties hereto . . . and the Owners of Outstanding Bonds any benefit or any legal or equitable right, remedy, or claim under this Indenture." U.S. Trust further argued that the receiver's lack of standing was "confirmed" by the fact SWIB had transferred the bonds to HHI and HHI had then sued U.S. Trust on the bonds in Texas. Pointing to the definition of "Owner" contained in the indentures, U.S. Trust argued that since the Heartland Funds had rights under the indentures only in their capacity as bond Owners, they lost those rights when they stopped being Owners. In other words, any such rights had passed to SWIB.

In his declaration, U.S. Trust's counsel echoed some of the same assertions made in the motion and added that a comparison of the pleadings in the California federal case and the Texas case "confirms that HHI (transferee) and the Heartland Receiver (transferor) are both suing U.S. Trust for the same alleged conduct in relation to the same population of Heritage bonds asserting the same alleged rights under the trust indentures. . . ." In the order granting partial summary judgment, the district court essentially concurred with U.S. Trust's assertion that the sales agreement between the funds and SWIB, the bonds, the indentures, and Wisconsin

common law all supported the conclusion that the sale of the bonds passed all of the Heartland Funds' rights to SWIB.[11] In the order, the court states that the Heartland Receiver had conceded that "within the meaning of the Indentures, the Heartland Funds are not the Owner(s)' of the Sold Bonds and were not the Owner(s)' of the Sold Bonds at the time the Heartland Receiver Action was filed." The court further mentions the fact that the bonds were subsequently conveyed to HHI, and HHI was the plaintiff in a pending proceeding in Texas. The court concluded that "[a]lthough the Heartland Receiver *conceivably* had rights as a registered owner at one time . . . the Heartland Receiver expressly transferred said rights when it sold out to SWIB even before bringing this action." (emphasis added). The court additionally stated that "[t]o further solidify this point . . . U.S. Trust has been sued in Texas state court by the current owner of the Heritage bonds sold by the Heartland funds to SWIB."

## C. Application of the Law to the Facts

██ Applying issue preclusion under the facts presented by HHI, we must first consider whether (1) the issue presented in the current litigation is "in substance the same" as an issue resolved in the prior proceeding, and (2) the issue in question was "actually and necessarily determined" in the prior proceeding. *See Paige K.B.*, 594 N.W.2d at 374, 376. In this proceeding, HHI asserts that it has the right to sue under the indentures even though it is not listed by name on the bond register. The key issue resolved in the California federal case, and the one on which the court based its order, was whether the

---

11. The district court apparently entered only an order of partial summary judgment because there were other bonds at issue in the case that the Heartland Funds had not transferred to SWIB.

Heartland Funds (via the Heartland Receiver) could enforce the indentures after having transferred away all of their rights under the indentures. These issues are not substantially the same, and thus, the key issue here was not "actually and necessarily determined" in the prior litigation. In order to determine whether the Heartland Receiver had any right to sue—the Heartland Funds having transferred all of their rights in the bonds—the federal court was not required to, and indeed did not, determine whether being listed by name on the bond register was a prerequisite for bringing claims based on the indentures. Further, in deciding that the Heartland Receiver did not have any rights under the indentures, the federal court was not required to, and indeed did not, determine whether HHI had any rights under the indentures. While the court mentioned in its order that "the current owner of the Heritage bonds" (HHI) had sued U.S. Trust in Texas, the court did not hold that HHI had the right to sue as an "Owner" under the indentures. The conclusion of the court was merely that whatever ownership rights had been held by the Heartland Funds had been passed to SWIB and then to HHI.[12] Accordingly, HHI has not demonstrated that issue preclusion should apply under the facts of this case.

■ In determining the applicability of judicial estoppel to the facts of this case, we consider the following factors: (1) whether U.S. Trust's current position is "clearly inconsistent" with its prior position; (2) whether U.S. Trust successfully persuaded the prior court to accept the position, such that it would appear that either this court or the prior court was

misled; and (3) whether U.S. Trust would derive an unfair advantage or impose an unfair detriment on HHI if not estopped. *See New Hampshire*, 532 U.S. at 750–51, 121 S.Ct. 1808. We begin by examining whether U.S. Trust has taken clearly inconsistent positions in the two lawsuits. As explained above, in the federal proceeding in California, U.S. Trust asserted that the Heartland Receiver did not have any right to sue under the indentures because the Heartland Funds had transferred any conceivable rights they had respecting the bonds when they sold the bonds to SWIB. In the present case, U.S. Trust asserts that HHI does not have the right to sue under the indentures because it is not listed by name on the bond register. These are not clearly inconsistent positions. HHI would have us read into U.S. Trust's federal court position a suggestion that the Heartland Receiver would have had the right to sue if the Heartland Funds had not already transferred the bonds, regardless of whether the funds or the receiver had been listed by name on the bond register, or, alternatively phrased, that all that was required to sue was bond ownership in any form. But this position is neither what U.S. Trust actually argued in federal court nor, as explained above, what they needed to argue in order to demonstrate that the Heartland Receiver did not have the right to sue on the indentures. Thus, we cannot say that U.S. Trust's positions in the two lawsuits were clearly inconsistent.

Next, we consider whether U.S. Trust's two positions make it appear that one or the other court was misled. Even assuming that U.S. Trust's statements in the federal case regarding HHI's lawsuit in

---

12. It should also be pointed out that HHI does not cite to any evidence regarding whether the Heartland Funds were at one time listed by name on the bond register. Absent such evidence, it cannot be assumed that HHI and the Heartland Funds had the exact same rights of ownership.

Texas could be read as suggesting somehow that HHI had a right to sue on the bonds, the decision in the federal court did not turn on this implication. As explained in the federal court order granting partial summary judgment, the court based its decision on the fact that the Heartland Funds had transferred away whatever conceivable rights they had in the bonds prior to filing suit. Although the court mentioned the Texas proceeding, it did not base its opinion on the existence of that proceeding. Similarly, there is no indication that the trial court was misled by U.S. Trust's argument in the present case. Consequently, we cannot say that the two positions give the appearance that either court was misled on the actual issue before it.

Lastly, we see no unfair advantage for U.S. Trust or unfair detriment for HHI developing if U.S. Trust is not estopped in the current case. The key issues in the two cases are substantially different such that resolution of the issue in the current case (*i.e.*, HHI's right to sue when not listed by name on the bond register) does not require reference to the issue in the prior case (*i.e.*, the Heartland Receiver's right to sue subsequent to the Heartland Funds' having transferred away all rights under the bonds). Accordingly, U.S. Trust is not judicially estopped from making its ownership argument in the present case. We overrule HHI's second issue.

### V. Actions Subsequent to Summary Judgment

In its third issue, HHI asserts that it now has the right to sue for enforcement of the indentures because, subsequent to the grant of summary judgment, it received the bonds in paper form and had its own name listed on the bond register as owner of the bonds.[13] HHI presented evidence of these transactions to the court in association with its Motion to Modify, Correct, Reform, or, in the Alternative, Vacate, the Court's December 27, 2007 Judgment ("Motion to Modify"). As HHI acknowledges in its reply brief, a trial court is not required to consider late-filed summary judgment evidence but may do so "as long as the court affirmatively indicates in the record that it accepted or considered the evidence." *Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 702 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (quoting *Stephens v. Dolcefino*, 126 S.W.3d 120, 133–34 (Tex.App.-Houston [1st Dist.] 2003, pet. denied)). Rule 166a confers broad discretion on the trial court in deciding whether to accept late-filed summary-judgment evidence. *See* Tex. R. Civ. P. 166a (imposing deadlines for filing evidence "[e]xcept on leave of court"); *Tex. Prop. & Cas. Ins. Guar. Ass'n v. Sw. Aggregates, Inc.*, 982 S.W.2d 600, 611, (Tex.App.-Austin 1998, no pet.). When a court considers late-filed summary judgment proof, it will expressly indicate that it is doing so in a written order or in open court. *See, e.g., Auten*, 209 S.W.3d at 702–03 (reviewing delinquent evidence on appeal because the trial court stated in its order denying the motion that it considered the evidence); *Stephens*, 126 S.W.3d at 133–34 (reviewing delinquent evidence on appeal because trial court indicated in open court that the evidence would be included in the summary judgment record). Here, the trial

---

13. The trial court granted summary judgment favoring U.S. Trust on December 27, 2007. After that order, HHI filed several motions requesting that the court reform or vacate the judgment. At various times, HHI also filed several pieces of evidence purporting to demonstrate that it then held the bonds in paper form and that the bonds were then registered in HHI's name on the bond register. Because of our resolution of the issues in this case, we need not address the substantive worth of this evidence.

court did not make any such express statement, either in the order denying the Motion to Modify or in the hearing on the motion. Thus, we cannot say that at any point the court affirmatively indicated its acceptance or consideration of the late-filed evidence. Accordingly, we overrule HHI's third issue.

## VI. Amendment

 In its fourth issue, HHI contends that the trial court erred in refusing to permit amendment of HHI's pleadings after the trial court granted the plea to the jurisdiction/motion for summary judgment. HHI sought to amend its pleadings to assert that it had obtained the bonds in paper form and had its own name listed on the bond register. HHI's arguments under this point are predicated on the rule that if a plea to the jurisdiction appears meritorious, a plaintiff should be allowed to amend its pleadings to attempt to cure the jurisdictional defect. *See generally Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex.2007). However, as explained above, the resolution of this case does not rest on jurisdictional principles, raised in a plea to the jurisdiction, but on the conclusion that HHI had no right to sue on the contract that it was attempting to enforce, as raised in the motion for summary judgment. Thus, HHI's arguments under this issue miss the mark. We overrule HHI's fourth issue.

## VII. Remaining Issues

Because HHI was not entitled to sue to enforce the bond indentures, the trial court did not err in granting summary judgment favoring U.S. Trust. Furthermore, because the trial court's judgment is supported by this ground for summary judgment, we need not consider either U.S. Trust's additional grounds for summary judgment or HHI's sixth issue challenging those other grounds. Accordingly, we overrule HHI's sixth issue.

 In its fifth issue, HHI contends that the trial court erred in dismissing HHI's claims "with prejudice" because a dismissal for want of jurisdiction should be without prejudice against refiling. However, as explained above, we interpret the trial court's judgment as a grant of summary judgment on the merits, not as a grant of a plea to the jurisdiction. A grant of summary judgment on the merits is with prejudice against refiling. *See Yasuda Fire & Marine Ins. Co. of Am. v. Criaco*, 225 S.W.3d 894, 898 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (collecting cases). Accordingly, we overrule HHI's fifth issue.

Having overruled all of HHI's appellate issues, we affirm the trial court's judgment.