# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00104-CV

---

**Realtex Housing Management, LLC, Appellant**

**v.**

**Villa Main Housing Associates, Ltd., Appellee**

---

### FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-001482, THE HONORABLE MAYA GUERRA GAMBLE JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Realtex Housing Management, LLC, (Realtex) appeals from the trial court's judgment in favor of Villa Main Housing Associates, Ltd., (Villa Main) on its claims against Realtex arising out of an agreement for management of property Villa Main owned in Port Arthur, Texas. We will affirm the trial court's judgment.

### BACKGROUND[1]

Villa Main and Realtex executed a property management agreement ("the Agreement") effective December 1, 2011, for management of property Villa Main owned in Port Arthur ("the Property"). Pursuant to the Agreement, Realtex agreed to manage the Property in compliance with all applicable laws, including Section 42 of the Internal Revenue Code (the

---

[1] The facts set forth in this section are derived from findings of fact the trial court filed after conducting a bench trial and, unless otherwise indicated, are unchallenged by Realtex.

low-income housing tax credit program); Section 8 of the United States Housing Act (the Housing Choice Voucher Program); the Housing Assistance Payment Contract applicable to the Property; as well as other applicable federal and state statutes and regulations relating to affordable housing. The Agreement includes Realtex's agreement to "conduct its operations according to all Applicable Law, and as outlined in loan documents, bond documents, Land Use Restriction Agreements, Extended Use Agreements and the Partnership Agreement, and/or any other type of agreement related to [Villa Main] or the Project," which included the low-income housing tax credit program, Section 8 Housing Choice Voucher Program, and Housing Assistance Payment contracts, each of which applied to operation and management of the Property. The Agreement also required Realtex to maintain an insurance policy protecting "against loss due to employee fraud, theft, dishonesty, defalcation, and embezzlement."

Pursuant to the Agreement, Realtex agreed to indemnify, protect, defend, and hold Villa Main harmless from and against "all Claims, demands, actions, liabilities, losses, costs, expenses, damages, penalties, interest, fines, injuries and obligations, including reasonable attorneys' fees, court costs and litigation expenses" incurred by Villa Main on account of (a) any act by Realtex, its agents or employees, outside the scope of Realtex's authority under the Agreement; (b) any act or failure to act by Realtex, or its agents or employees, constituting negligence, misconduct, fraud, or breach of the Agreement; and (c) any act or omission by Realtex, or its agents or employees, in violation of any applicable law.

In April 2016, Realtex notified Villa Main that one of its employees assigned to the Property—Lynette Jones-Nixon—had been terminated due to violation of corporate policies. The termination was prompted by Realtex's obtaining information that there may have been improprieties with how on-site personnel handled the United States Department of Housing and

2

Urban Development (HUD) subsidies paid under the Section 8 Housing Assistance contract and other funds entrusted to Villa Main by HUD. In that same notification, Realtex indicated that another of its employees assigned to the Property (Rosalba Sanchez) had resigned.

In January 2018, HUD's Office of Inspector General issued an audit report ("the OIG Audit") stating that Realtex's employees at the Property had perpetrated a fraud scheme during the several-year audit period by which (1) $534,741 in federal subsidies were paid for nonexistent "ghost tenants" and (2) $1,095,364 in federal subsidies were improperly paid because they were not supported by adequate documentation required by the Section 8 Housing Choice Voucher Program and Housing Assistance Payment contract.[2] The trial court found that the OIG Audit reflected the results of an investigation of fraudulent conduct occurring at the Property only during Realtex's tenure as property manager pursuant to the Agreement. The trial court also found that the OIG Audit did not reflect the results of any investigation of conduct occurring at the Property before or after Realtex's tenure as property manager. The OIG determined that Jones-Nixon and Sanchez set up nonexistent "ghost tenants" by filing subsidy information for tenants who had moved out of units and rented those units to non-Section 8 tenants to collect the rent for themselves. Jones-Nixon and Sanchez admitted to this scheme pursuant to a plea agreement in their criminal trials. The OIG also determined that 43 tenant files were deficient in numerous ways, including falsified income, income discrepancies, missing documentation and certifications, and missing tenant files. The OIG Audit concluded that the fraud was "obvious."

---

[2] The fraudulent conduct commenced as early as 2009, before Realtex signed the Agreement with Villa Main. The individuals who committed the fraudulent conduct worked for the company that preceded Realtex as manager of the Property and were retained by Realtex when it took over managing the Property.

3

In October 2018, HUD demanded that, in light of the findings contained in the OIG Audit, Villa Main repay (1) $534,741 for federal subsidies paid for nonexistent "ghost tenants" and (2) $1,095,364 for federal subsidies improperly paid because they were not supported by adequate or required documentation. Villa Main sued Realtex asserting causes of action for breach of contract, negligent supervision, and negligence. Realtex filed a general denial and asserted affirmative defenses of impossibility of performance and limitations. After a three-day bench trial, the case was suspended for the court to consider a jurisdictional challenge raised by Realtex. Trial resumed and, at its conclusion, the trial court rendered judgment in Villa Main's favor. The court determined that it had jurisdiction over the case and that Realtex had failed to prove its defenses of impossibility of performance and limitations. The court took judicial notice of Villa Main's election to pursue its remedies pursuant to its breach of contract claim and awarded Villa Main actual damages in the amount of $1,630,105.00. The court also awarded Villa Main attorneys' fees of $244,380.75 and post-judgment interest.

Realtex then perfected this appeal, arguing in five issues that the trial court erred by (1) finding that it had jurisdiction over the case, (2) finding that Realtex failed to prove its affirmative defenses of impossibility of performance and limitations, (3) awarding damages that were purely speculative, and (4) awarding Villa Main attorneys' fees and costs.

## DISCUSSION

### *Subject Matter Jurisdiction*

In its second appellate issue, Realtex asserts that Villa Main lacked standing to bring this suit and, consequently, the trial court erred in determining that it had subject-matter jurisdiction over the case. Realtex asserts that Villa Main, a limited partnership, was "require[d]

4

to have one or more general partners and one or more limited partners." *See* Tex. Bus. Orgs. Code § 1.002(50) (defining "limited partnership" as "a limited partnership under Title 4 and that has one or more general partners and one or more limited partners"). Realtex argues that Villa Main's general partner, GP, LLC, was required to withdraw as a general partner of the limited partnership due to its failure to pay franchise taxes as required by the Texas Tax Code. *See* Tex. Tax Code §§ 171.251 (providing that comptroller shall forfeit corporate privileges of corporation that fails to pay franchise taxes imposed); .2515 (providing that comptroller may for same reasons used in relation to forfeiture of corporate privileges forfeit right of taxable entity to transact business in state). Realtex maintains that, as a result, "Villa Main, as a limited partnership, does not exist as an entity for any purpose other than for winding up, amounting to the forfeiture of the right to do business." Realtex contends that because Villa Main has forfeited its right to do business, it lacks standing to assert claims against Realtex. This contention, however, raises a complaint about Villa Main's capacity to sue, not its standing. *See, e.g.*, *Heartland Holdings Inc. v. United States Tr. Co. of Tex. N.A.*, 316 S.W.3d 1, 6-7 (Tex. App.— Houston [14th Dist.] 2010, no pet.) ("While the question of whether a party is entitled to sue on a contract is often informally referred to as a question of 'standing,' it is not truly a standing issue because it does not affect the jurisdiction of the court; it is, instead, a decision on the merits.").

A party must have both standing and capacity to sue. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). "'Texas courts have had considerable difficulty in defining the relationship of the twin doctrines of capacity and standing.'" *Id.* at 848, n.1 (quoting 5 William V. Dorsaneo III, Texas Litigation Guide § 70.06[2] (2005)). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome, whereas the issue of capacity 'is conceived of as a procedural

5

issue dealing with the personal qualifications of a party to litigate.'" *Id.* at 849 (quoting 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1559, at 441 (2d ed. 1990)). "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996); *see also* 6A Wright, Miller & Kane § 1559, at 441 ("Capacity has been defined as a party's personal right to come into court, and should not be confused with the question of whether a party has an enforceable right or interest.").

In Texas, the standing doctrine requires that there be (1) "a real controversy between the parties," that (2) "will be actually determined by the judicial declaration sought." *Nootsie*, 925 S.W.2d at 662. Without standing, a court lacks subject matter jurisdiction to hear a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Capacity, on the other hand, is concerned with the party's legal authority to pursue a claim. *Lovato*, 171 S.W.3d at 848-49. "For example, minors and incompetents are considered to be under a legal disability and are therefore unable to sue or be sued in their individual capacities; such persons are required to appear in court through a legal guardian, a 'next friend,' or a guardian ad litem." *Id.* at 849. A party who has suffered an injury and therefore has a justiciable interest in the controversy may lack legal authority to sue and, therefore, suit must be brought on their behalf by another party that does have the legal authority to sue. *Id.* "Unlike standing, however, which may be raised at any time, a challenge to a party's capacity must be raised by a verified pleading in the trial court." *Id.* (citing Tex R. Civ. P. 93(1)-(2); *Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003)).

6

On appeal, Realtex asserts that, on October 27, 2011, Villa Main was required to "wind up" its business because its sole general partner, GP, LLC, had ceased to be a general partner of the limited partnership ninety days after forfeiture of its right to transact business in the state. *See* Tex. Tax Code § 171.2515 (taxable entity forfeits right to transact business in state if it fails to pay franchise taxes); Tex. Bus. Org. Code § 153.501(b)(2) (withdrawal of general partner of domestic limited partnership is event requiring winding up under section 11.051(4) of Texas Business Organizations Code). Realtex argues, therefore, that Villa Main had no authority to do anything other than wind up its business, which it maintains constitutes "the forfeiture of the right to do business." This assertion, however, is one challenging Villa Main's legal authority to pursue its claim against Realtex and is, therefore, a complaint about capacity. *See Lovato*, 171 S.W.3d at 848-49.[3]

Realtex also asserts on appeal that Villa Main's limited partnership agreement required its dissolution after failure to appoint a new general partner to replace GP, LLC. Realtex maintains that Villa Main no longer "existed," and its claims should have been brought on its behalf by "any number of entities, including a successor-in-interest of GP, LLC or its insurers." Again, this is a complaint about Villa Main's capacity to bring its claims against Realtex, not its standing. *See Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020) ("[T]he question whether a plaintiff has established his right 'to go forward with [his] suit' or 'satisfied the requisites of a particular statue' pertains 'in reality to the right of the plaintiff to relief rather than to the [subject-matter] jurisdiction of the court to afford it.'" (quoting *Dubai*

---

[3] We also note that the winding up procedures set forth in the Texas Business Organizations Code expressly provide that "during the winding up process, the domestic entity may prosecute or defend a civil, criminal, or administrative action." *See* Tex. Bus. Org. Code § 11.052(b).

7

*Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76-66 (Tex. 2000)); *Lovato*, 171 S.W.3d at 849 (when party with justiciable interest in suit lacks legal authority, i.e., capacity, to sue, suit must be brought on its behalf by another party that does have legal authority to sue). Realtex's failure to file a verified pleading challenging Villa Main's capacity waived its right to complain about the matter on appeal. *See Nootsie*, 925 S.W.2d at 662 (parties who do not follow Texas Rule of Civil Procedure 93's mandate to file verified pleading when arguing that plaintiff lacks legal capacity to sue waive any right to complain about matter on appeal). We overrule Realtex's second issue.

### *Statute of Limitations*

In its third issue, Realtex argues that the trial court erred in concluding that Villa Main timely filed its negligence and negligent hiring claims because Villa Main did not bring those claims within the applicable two-year statute of limitations. Realtex requests that this Court "reverse the trial court's findings and render judgment in favor of Realtex as to negligence." We need not address this argument because, even assuming it is meritorious, any alleged error would be harmless. The trial court's judgment recites that it "takes judicial notice of [Villa Main's] election to pursue its remedy pursuant to [its] breach of contract claim against [Realtex]." Thus, the trial court's judgment was based on a breach of contract claim, not a negligence claim. Realtex does not argue that Villa Main failed to bring suit within the four-year limitations period for a breach of contract claim. Because any error by the trial court related to the limitations period for bringing a negligence claim would have no effect, it is ultimately harmless and would not warrant reversal. *See* Tex. R. App. P. 44.1(a)(1) (no judgment may be

8

reversed on appeal on ground that trial court made error of law unless court of appeals concludes that error probably caused rendition of improper judgment).  We overrule Realtex's third issue.

### *Impossibility of Performance*

In its first issue, Realtex argues that the trial court erred in determining that it failed to prove its defense of impossibility of performance.  Realtex asserts that its failure to comply with its obligations under the Agreement was excused because of objective original impossibility:  specifically, the fraudulent conduct of Nixon-Jones and Sanchez, which had been ongoing at the time it executed the Agreement and which it was unaware of and could not detect.

Section 266 of the Restatement of Contracts provides:

> Where, at the time a contract is made, a party's performance under it is impracticable without his fault because of a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty to render that performance arises, unless the language or circumstances indicate the contrary.

Restatement (Second) of Contracts § 266.  The trial court found that, with respect to the "ghost tenant" issue, the relevant facts "were confirmed by interviews with former Section 8 tenants, former onsite managers, employers, reported income contributors, and non-Section 8 tenants, who confirmed that Jones-Nixon and Sanchez set up nonexistent 'ghost tenants' by filing subsidy information for tenants who had moved out of the units and rented those units to non-Section 8 tenants."  With respect to the unsupported subsidy payments and the deficiencies in the required documentation, the court found that "a review and analysis of each of the files [] reflect[ed] that each of the files was deficient in the way identified by OIG's investigation and reflected in the OIG Audit."  The trial court further found that:

> Had Realtex engaged in a preliminary audit of the tenant files at the time it began managing the Property, Realtex could have identified and corrected the compliance deficiencies described in the OIG Audit, whether by supplying the missing documentation, correctly certifying or recertifying tenant eligibility, or otherwise removing non-eligible tenants from units. To the extent any compliance deficiencies were present in any of the tenant files at the time it began managing the Property, Realtex was retained to and capable of correcting those deficiencies in accordance with the terms of the Management Agreement.

Thus, the trial court's finding supports the conclusion that Realtex *did* have reason to know of the facts that underlie Villa Main's breach of contract claim; i.e., that the Property was not being managed in compliance with all applicable laws as required by the terms of the Agreement. Although not directly challenging this finding, on appeal Realtex states that "documents provided in advance of and during the management period supported that no such fraud could have been occurring." Specifically, Realtex points to evidence that it relied on the records of the previous property manager and on prior third-party audits when conducting its due diligence before assuming management of the Property and that, in retrospect, those documents were unreliable and inaccurate. Realtex further asserts that it continued to rely on annual audit reports prepared by third parties "which continued to be devoid of any findings of deficiencies or deviations from relevant laws and statutes." Realtex relies on this evidence to argue that there is legally and factually insufficient evidence to support the trial court's finding that Realtex could have identified the compliance deficiencies. Realtex argues that, instead, the evidence establishes that the "covert fraud" made it impossible for Realtex to perform its contractual obligations to conduct its operations according to all applicable law.

When a party attacks the legal sufficiency of the evidence supporting an adverse finding on an issue on which it had the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Corp.*

*v. Francis*, 46 S.W.3d 237, 341 (Tex. 2001) (per curiam) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). We will sustain a legal sufficiency challenge only if the contrary proposition was conclusively established. *Id.* When a party attacks the factual sufficiency of an adverse finding on which it had the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Urista v. Bed, Bath & Beyond, Inc.*, 245 S.W.3d 591, 601 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The evidence Realtex points to fails to conclusively prove that it could not have learned that its employees were not conducting operations at the Property in compliance with applicable law. There was evidence at trial that Realtex performed a complete audit of the tenant files when it took over management of the Property for the very purpose of identifying and resolving preexisting compliance deficiencies and to avoid being held responsible for any noncompliance by its predecessors. There was also testimony from Realtex that correcting such deficiencies was the type of work it was retained to perform. Moreover, the Agreement itself contemplated that Realtex was to "secure full compliance" with applicable laws, indicating the possibility of preexisting incidences of noncompliance. Evidence that Realtex relied on third-party auditors does not excuse it from the obligation it undertook to identify and correct compliance deficiencies. This is especially true given the trial court's unchallenged finding that those deficiencies could have been identified and readily corrected along with the OIG's determination that the compliance deficiencies were "obvious."

Further, Realtex failed to establish that one of the basic assumptions it made when executing the Agreement was that there was no existing fraud or incidences of noncompliance. In fact, evidence was presented at trial that Realtex undertook an audit of the tenant files when it

11

took over management of the Property for the purpose of ensuring that it would not be held responsible for its predecessors' errors. And Realtex testified at trial that the compliance deficiencies were "readily correctible" even if "not financially feasible." Rather than support the conclusion that Realtex *could not* perform its obligations under the agreement, the evidence supports the conclusion that Realtex simply *did not* perform them. Realtex did not conclusively establish its impossibility defense, nor is the evidence so weak that the trial court's finding is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. We overrule Realtex's first issue.

***Damages***

In its fourth issue, Realtex asserts that the trial court erred in awarding Villa Main $1,630,105 in actual damages because Villa Main failed to demonstrate that those damages were more than merely speculative. Realtex maintains that Villa Main relied solely on a HUD demand letter that constitutes no evidence of any actual damages sustained by Villa Main. This argument is a challenge to the legal sufficiency of the evidence supporting the trial court's damages award. We may sustain the challenge only if the record shows (1) no evidence supporting Villa Main's damages; (2) the evidence offered to prove damages is no more than a scintilla; (3) the evidence establishes the opposite of the damages awarded; or (4) the court was barred by law or the rules of evidence from considering the only evidence offered to prove damages. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 613 (Tex. 2016).

The evidence supporting the damages award consists not only of the HUD demand letter, but also the detailed audit report that identifies each instance in which HUD found that a payment had been made to a "ghost tenant" or made without the required supporting

12

documentation. Realtex did not present evidence to dispute the accuracy of the audit report. The HUD demand letter and the instances of noncompliance identified by the OIG in its audit are evidence that Villa Main was legally obligated to repay $1,095,364 in unsupported subsidy payments and $534,741 in improperly paid Section 8 rental assistance. The Agreement contains a provision requiring Realtex to indemnify Villa Main for any "demands" and "obligations" arising out of "any act or failure to act by Realtex, or its agents or employees, constituting negligence, misconduct, fraud, or breach of the Agreement." The evidence was undisputed that the HUD demand for repayment was caused by the conduct of Realtex's employees, and the unchallenged amount demanded by HUD and detailed in the audit report are some evidence supporting the trial court's award of $1,630,105 in damages. The amount demanded in the HUD letter was supported by the audit findings and the audit report itself itemized the amounts that HUD asserted were improperly paid. *Cf. U.S. Renal Care, Inc. v. Jaafar*, 345 S.W.3d 600, 614-15 (Tex. App.—San Antonio 2011, pet. denied) (concluding that demand letter with no supporting evidence showing how amount demanded was derived and calculated was conclusory and therefore not evidence of amount actually owed).

Despite this evidence, Realtex points to the following language in the demand letter:

> If the owner does not cure the violations within the requisite timeframe, we will refer the issue to the Departmental Enforcement Center (DEC) to pursue legal action including referral to the U.S. Attorney's Office.

Realtex argues that the evidence of damages is legally insufficient because there was no evidence that the matter was ever referred to the DEC, as the letter threatened would occur in the event of nonpayment. Realtex states that the referral would be for "a determination for an action under

13

the False Claims Act or the Program Fraud Civil Remedies Act," and then argues that any such enforcement claim would be barred by the applicable statute of limitations.[4] However, evidence that (1) Villa Main could be, but had not yet been, referred to the DEC for further enforcement actions under either the False Claims Act or the Program Fraud Civil Remedies Act and (2) that those enforcement actions would be barred by limitations does not negate the evidence as to HUD's independent claim against Villa Main for repayment of unsupported subsidies and rental assistance in the amount of $1.6 million. Because Villa Main is legally obligated to repay HUD $1.6 million, this amount represents the financial harm to Villa Main caused by Realtex's failure to comply with its obligations under the Agreement. Thus, Realtex was contractually obligated to indemnify Villa Main. *See Avenell v. Chrisman Props., L.L.C.*, No 14-08-01180-CV, 2010 WL 1379972, at *4 (Tex. App.—Houston [14th Dist.] Apr. 8, 2010, no pet.) (mem. op.) ("Generally, the parties to a contract can agree on the remedy to be applied if the agreement is breached; such an agreement should be enforced unless it is illegal or against public policy.").

Realtex also asserts that the damages award should be reversed because it encompasses damages it contends were assessed for actions occurring after its contract with Villa Main had ended and, consequently, should not have been attributed to Realtex. Realtex relies on a statement in the OIG Audit that it covered a period from January 2012 through May 2017. Realtex asserts that because its contract was terminated with Villa Main in May 2016, the damages award included damages "for events or occurrences over which Realtex had no control or contractual duty to act or prevent." A review of the evidence, however, confirms that the amount demanded by HUD was related to repayment for subsidies paid out

---

[4] Realtex did not assert or present evidence that HUD's claims against Villa Main based on its audit were barred by limitations.

14

only during Realtex's tenure. The duration of the "Audit Period" identified in the report is not by itself evidence that any of the $1.6 million HUD demanded be repaid related to acts or omissions occurring after May 2016. In fact, the Audit Report states that "[t]he fraud detailed in this report occurred during the time RealTex Housing Management, LLC was the management agent," which the report stated was from December 2011 to May 2016. Further, there was testimony that after Villa Main terminated the Agreement with Realtex in May 2016, the subsequent property manager did not submit any requests for HUD subsidies for any tenants for whom it did not have supporting documentation. The evidence does not demonstrate that any of the $1.6 million demanded by HUD was related to or arose from conduct occurring after May 2016. We overrule Realtex's fourth issue.

### Attorneys' Fees

In its fifth issue, Realtex argues that the trial court erred in awarding attorneys' fees to Villa Main because Villa Main failed to "specifically request an award of attorney's fees under any contract between it and Realtex." The Agreement provides that Realtex shall indemnify Villa Main for costs and expenses "including reasonable attorneys' fees, court costs and litigation expenses" incurred by Villa Main because of Realtex's breach of the Agreement. According to Realtex, however, Villa Main's pleadings requested attorneys' fees "solely pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code" and, consequently, Villa Main waived a claim to recover fees pursuant to the Agreement.[5] Realtex relies on cases holding

---

[5] Because Realtex is a limited liability company, the trial court could not order Realtex to pay attorneys' fees pursuant to Texas Civil Practice and Remedies Code chapter 38. *See Permit Partners, LLC v. Sauer*, No. 03-19-00059-CV, 2021 WL 298415, at *6 (Tex. App.—Austin Jan. 29, 2021, pet. denied) (mem. op.) (trial court not authorized to assess fees under Texas Civil Practice and Remedies Code section 38.001 against limited liability company).

that a party whose pleadings seek attorneys' fees only under Chapter 38 waives its right to recover fees pursuant to a contractual agreement between the parties. *See, e.g.*, *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 60-61 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding that party who pleads for attorneys' fees only under Chapter 38 waives its claim for attorneys' fees under contractual provision "because a court's judgment must conform to the pleadings"); *see also* Tex. R. Civ. P. 301 ("The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity.").

In its live pleading, with respect to attorneys' fees, Villa Main requested "recovery of these attorneys' fees, costs, and expenses pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code and applicable common law." Villa Main's pleadings also recite the indemnification provision contained in the Agreement, including Realtex's agreement to indemnify Villa Main for attorneys' fees and costs incurred by Villa Main as a result of Realtex's breach of the Agreement. In its prayer for relief, Villa Main requested "[a]ttorneys' fees; and [a]ll other relief to which Plaintiff is entitled." "A prayer for general relief will support any relief raised by the evidence and consistent with the allegations in the petition." *Salomon v. Lesay*, 369 S.W.3d 540, 553 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Here, Villa Main's allegations in its petition include that breach of the Agreement gives rise to Realtex's obligation to indemnify Villa Main for its attorneys' fees. The evidence at trial was consistent with the allegations of breach of contract and the resulting indemnification obligation. Villa Main's pleadings did not request attorneys' fees *solely* pursuant to Chapter 38, but also "pursuant to

---

Although the statute was subsequently amended to permit the assessment of attorneys' fees against limited liability companies, the prior version of the statute applies in this case.

16

applicable common law" and, additionally, included a prayer for general relief. *Cf. Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 728 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (because plaintiff's petition sought attorneys' fees only under Chapter 38, it could not recover fees under indemnification provision of contract).

Texas law follows a "fair notice" standard of pleading, meaning we look to whether a petition gives fair notice of the facts upon which the pleader bases his claims. *DeRoeck v. DHM Ventures, LLC*, 556 S.W.3d 831, 835 (Tex. 2018). The key inquiry is whether the opposing party "can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Id.* Villa Main's petition quotes the indemnification provision entitling it to attorneys' fees incurred due to Realtex's breach of contract and the pleading seeks attorneys' fees pursuant not only to Chapter 38, but also under "applicable common law." Villa Main also prayed for whatever general relief it was entitled to. We conclude that the pleadings were sufficient to support an award of attorneys' fees pursuant to the indemnification provision contained in the Agreement. *See Daugherty v. Highland Cap. Mgmt., L.P.*, No. 05-14-01215-CV, 2016 WL 4446158, at *2-3 (Tex. App.— Dallas Aug. 22, 2016, no pet.) (mem. op.) (holding that when plaintiff quoted indemnification provision permitting recovery of attorneys' fees and included request for fees pursuant to "section 38.001 and any other applicable law," pleading was sufficient to put defendant on notice that plaintiff included claim for its attorneys' fees pursuant to contract). We overrule Realtex's fifth issue.

**CONCLUSION**

Having overruled each of Realtex's five appellate issues, we affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Justices Baker, Kelly, and Theofanis

Affirmed

Filed:   December 15, 2023