**WHITNEY NATIONAL BANK, f/k/a Bank of Houston, and William P. Traylor, Appellants,**

v.

**Edwin F. BAKER, Administrator of the Estate of Weldon T. Baker, Deceased, Appellee.**

No. 01–02–00021–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 17, 2003.

Rehearing Overruled Jan. 15, 2003.

Paul S. Francis, Baker & Hostetler, LLP, Houston, for Appellants.

W. Perry Zivley, Houston, C. Michael Clark, Corinth, for Appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HANKS.

## OPINION

SAM NUCHIA, Justice.

Appellee, Edwin F. Baker, administrator of the estate of Weldon T. Baker (Baker), deceased, sued appellants, Whitney National Bank, formerly known as Bank of Houston, and William P. Traylor, the former president of the bank, to recover withdrawals by Zelia Lopes Rodrigues from two accounts over a four-year period following the death of Baker. The trial court rendered judgment on the jury verdict in favor of appellee, and the bank and Traylor appeal. We reverse and render a take-nothing judgment.

## BACKGROUND

Baker, a United States citizen, lived with his wife and three sons in Brazil, where he had business interests. In the early 1970s, Baker and his wife separated, and she returned to the United States with their sons. The Bakers never obtained a divorce, but they lived separately for the rest of his life. In 1977, Baker and Rodrigues, a native of Brazil, entered into a contractual relationship, which was formalized by a document that, as translated into English, was entitled "Term of Good Living" and designated Baker as "The Bridegroom" and Rodrigues as "The Bride." Rodrigues was also involved in Baker's business affairs. The personal and busi-

ness relationship between Baker and Rodrigues continued until Baker's death in 1993.

In 1983, a money market investment account, number 90–0387–8, was opened at the Bank of Houston in Rodrigues's name (the ZLR account). Rodrigues's signature was the only one that appeared on the signature card. On the reverse side of the signature card, in the agency clause, Rodrigues signed as principal, and Weldon T. Baker was named as agent. The co-depositor clause was left blank.

In 1985, a commercial money market account, number 80–0416–1, was opened at the Bank of Houston with the account title of "Kolovid Establishment," a legal entity organized under the laws of Liechtenstein (the Kolovid account). Baker and Rodrigues signed the signature card on this account. On the reverse side of the card, in the agency clause, Rodrigues was named as agent, "Kolovid Establishment" was typed above the line for signature of principal, and Baker's signature appeared below that line. The co-depositor clause was left blank.

In 1990, new signature cards for the two accounts were sent to the bank. Both cards showed, as the first signature, "Buster Baker" and, as the second signature, "Kate Buster Rodrigues." The account titles were not changed. The co-depositor clauses and the agency clauses contained a series of "Xs" on the name and signature lines. After Baker died, Rodrigues continued to make deposits and withdrawals on the two accounts.

Baker's wife and sons did not learn of his death until 1995. After learning of his father's death, appellee contacted Traylor and asked whether Baker had any accounts at the bank. Traylor told him that Baker had not had any accounts at the bank for several years.

In 1996, appellee was appointed in Brazil to be administrator of Baker's estate. In November 1997, appellee's attorney notified the bank's attorney that, "as the legal representative and duly appointed Administrator of the Estate of Weldon Thomas Baker," appellee claimed an interest in the ZLR account or any other account in which Baker was a record owner, signatory, or party having a right of withdrawal. In December 1997, appellee's attorney again wrote the bank's attorney, stating that appellee had filed an application for appointment of independent administrator in Harris County and threatening legal action regarding the ZLR account.

On March 31, 1998, the probate judge signed an order appointing appellee administrator of Baker's estate and granting him the powers and duties to take possession of the contents of a safety deposit box at the Credit Suisse Bank in Zurich, Switzerland; to hire and pay attorneys, accountants, and any additional persons required; and to sue and defend lawsuits and exercise any rights necessary to protect assets of the decedent. The order noted that, in related federal litigation, the federal court had entered an order directing that future distributions for the benefit of the estate be made to the clerk of the registry of the Harris County Probate Court and not to appellee directly.

Appellee sued the bank and Traylor, alleging negligence and gross negligence in handling the funds of the estate, breach of fiduciary duty, breach of contract by permitting unauthorized withdrawals from the accounts, and misrepresentation regarding the existence of the accounts. The case was tried to a jury, which found that (1) on November 12, 1993, $798,188.23 in the Kolovid account and $102,501.01 in the ZLR account were assets of Baker; (2) the bank knew these funds were Baker's assets; (3)

Traylor knew these funds were Baker's assets; (4) a relationship of trust and confidence did not exist between Baker and Traylor; (5) after November 12, 1993, the bank charged the Kolovid account with items that were not authorized by a customer on the account, but did not make such an unauthorized charge against the ZLR account; (6) the total sum of disbursements of Baker's funds from the Kolovid account after November 12, 1993 was $220,718.10; (7) the bank and Traylor committed fraud against appellee with respect to the Kolovid account or the ZLR account; (8) $148,029.71 would compensate appellee for damages resulting from the fraud; (9) appellee discovered or should have discovered the unauthorized withdrawals by October 27, 1998; (10) items paid on the accounts before January 1, 1996 were paid in good faith; and (11) the evidence was not clear and convincing that harm was sustained to the estate as the result of the fraudulent conduct of the bank and Traylor. The jury awarded attorney's fees of $106,000 through trial, $35,000 for appeal to the court of appeals, and $35,000 for appeal to the supreme court.

On appeal, appellants challenge (1) the denial of their motion for judgment notwithstanding the verdict on their "statement defense," (2–3) the award on the breach-of-contract claims relating to the Kolovid account, (4) the award on the breach-of-contract claims relating to the ZLR account, (5) the award on the fraud claim, (6) the legal and factual sufficiency of the evidence to support any damages award, (7) the admission and exclusion of certain exhibits, (8) the award of attorney's fees, and (9) the calculation of pre- and postjudgment interest.

## DISCUSSION

### 1. The Statement Defense

In their first issue, appellants contend that they established their statement defense, which was based on section 4.406 of the Texas Business and Commerce Code, as a matter of law because "the undisputed evidence established this defense to all of Baker's claims." We construe appellants' issue to complain that the trial court erred in denying their motion for judgment notwithstanding the verdict.[1] Appellants had the burden of proof on their affirmative defense. *Young Refining Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 385 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

We review the grant or denial of a motion for judgment notwithstanding the verdict under a legal-sufficiency standard. *See Moore v. Bank Midwest, N.A.*, 39 S.W.3d 395, 400 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). When, as here, an affirmative defense was not submitted to the jury, we review the record to determine whether the issue was disputed or whether the defense was conclusively established by the evidence. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222–23 (Tex.1992) (stating, "Only disputed issues must be submitted to the jury."). A motion for judgment notwithstanding the verdict should be granted when the evidence is conclusive and one party is entitled to recover as a matter of law. *Phar-Mor, Inc. v. Chavira*, 853 S.W.2d 710, 713 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

Section 4.406 of the Business and Commerce Code provides, in pertinent part,

    (a) A bank that sends or makes available to a customer a statement of ac-

---

1. In the alternative, appellants contend that there was sufficient evidence to support the submission of the defense to the jury. Because of our ruling on the denial of the motion for judgment notwithstanding the verdict, we need not reach this alternative argument.

count showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid....

. . . .

(c) If a bank sends or makes available a statement of account or items pursuant to Subsection (a), the customer must exercise reasonable promptness in examining the statement or the items.... If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

(d) If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by Subsection (c), the customer is precluded from asserting against the bank:

(1) the customer's unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and

(2) the customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding 30 days, in which to examine the item or statement of account and notify the bank.

. . . .

(f) Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (Subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration....

Tex. Bus. & Com.Code Ann. § 4.406 (Vernon 2002).

Appellee did not dispute appellants' testimony that the bank sent regular, monthly statements for both accounts to Rodrigues. Rather, appellee argued that Baker was the customer and that, after Baker's death, the statements for the accounts should have been sent to Baker's representative.

The signature card for a bank account is a type of contract. *Allen v. Wachtendorf,* 962 S.W.2d 279, 282 (Tex. App.-Corpus Christi 1998, pet. denied). The name on an account is prima facie proof of ownership of the account. *See Tex. Commerce Bank–New Braunfels, Nat'l Assoc. v. Townsend,* 786 S.W.2d 53, 54 (Tex.App.-Austin 1990, writ denied) (determining that, because of name of account, bank had legal relationship only with depositor). A bank is not required to inquire into the ownership of the funds deposited. *Id.* A bank is entitled to rely on its deposit agreement when determining to whom it is indebted. *Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.,* 824 S.W.2d 557, 557 (Tex.1992).

In *Bank One,* Sunbelt Savings obtained a judgment against James Bramlett, who was sole shareholder, officer, and employee of Bramcon General Contractors. *Bank One,* 824 S.W.2d at 557. Sunbelt Savings knew that Bramlett, who did not have a personal account at the bank, commingled personal funds in Bramcon accounts. *Id.* at 557–58. Sunbelt Savings obtained a writ of garnishment against Bank One, naming Bramlett as the judgment debtor. *Id.* at 558. Bank One responded that it was not indebted to Bram-

lett. *Id.* After this response, the Bramcon funds were withdrawn from Bank One. *Id.* The trial court granted summary judgment in favor of Bank One on the ground that Bank One was not indebted to Bramlett. *Id.* The court of appeals reversed, and the supreme court reversed the court of appeals and rendered judgment for Bank One. *Id.* The supreme court concluded that, unless a deposit agreement created a debtor-creditor relationship between the bank and the judgment debtor, the bank was not indebted to the judgment debtor. *Id.* The court further stated:

> When a creditor wants to challenge title to funds held by a third party, the creditor should seek a writ of garnishment naming the nominal owner not the true owner. The court is then responsible for determining true ownership. Requiring a garnishee bank to determine true ownership of its deposits improperly shifts a judicial responsibility to the garnishee.

*Id.*

We consider the logic of *Bank One* to apply to the present case. The signature cards for the accounts were the only written evidence of the contract between the bank and the customer. The signature cards listed the name on one account as "Zelia Lopes Rodrigues" and on the other account as "Kolovid Establishment"; therefore, absent some evidence that the accounts were owned by another, they were the accounts of Rodrigues and Kolovid. The fact that Baker conducted the transactions in the Kolovid account did not establish that the account was his personal account. In addition, any commingling of Baker's funds in the two accounts did not make them Baker's accounts.

■ A corporation or other legal entity can conduct business only through natural persons. *See Household Credit Servs., Inc. v. Driscol,* 989 S.W.2d 72, 82–83 (Tex. App.-El Paso 1998, pet. denied). In the case of the Kolovid account, Baker and Rodrigues were the natural persons authorized by the signature cards to act on behalf of Kolovid Establishment. Baker's death did not alter Rodrigues's authority to act for Kolovid. The second signature card showing fictitious first names for Baker and Rodrigues did not require the bank to refuse to honor the true signature of Rodrigues, particularly in light of Traylor's testimony that he understood Kate Buster Rodrigues to be Zelia Lopes Rodrigues.

■ In the case of the ZLR account, Baker was listed as an agent on the account. His death did not affect Rodrigues's ownership of the account.

Here, the jury was asked to determine the amounts of money in each account that were assets of Weldon T. Baker on November 12, 1993. The jury's finding that the funds remaining in both accounts on November 12, 1993 were the assets of Baker was not equivalent to a finding that Baker was the customer on those accounts.

When the bank continued to send statements to Rodrigues after Baker's death, the bank was in compliance with section 4.406. Appellants established their statement defense, as a matter of law, to appellee's breach-of-contract claims.

We sustain appellants' first issue.[2]

***Fraud***

■ In their fifth issue, appellants contend that the trial court erred in rendering

2. Appellee argues that the bank's payment on the ZLR account was also in violation of section 448 of the Probate Code. Section 444 of the Probate Code authorizes the creation of multiple-party accounts payable, on request, to any one or more of the parties. Tex. Prob. Code Ann. § 444 (Vernon 1980). Section 445 provides for payment on a joint account after one of the parties is incapacitated or deceased. Tex. Prob.Code Ann. § 445 (Vernon

judgment on appellee's fraud claim because the evidence was legally and factually insufficient to support the elements of the claim, the instructions to the jury on the claim were incorrect, and there was no evidence to support any amount of damages on the claim. Appellants argue that appellee did not have standing to obtain information about the accounts and that appellants did not have a duty to inform appellee about any accounts on which Baker had an interest because, at the time of appellee's inquiries, he was not the administrator of the estate in Texas. Appellants also contend that Traylor's representation to appellee that Baker had not had any accounts at the bank in years was true because the accounts in question were the accounts of Kolovid and Rodrigues. Finally, appellants argue that there was no evidence to support the element of reliance in a fraud claim because appellee testified that Baker had told appellee about the Kolovid account in a telephone conversation.

Appellee contends that the fraud claim was based upon Traylor's affirmative misrepresentations, not his failure to disclose the accounts. Appellee argues that Traylor told him in October 1995 that Baker had not had accounts at the bank for several years and again in October 1996 that "there was nothing." As evidence of his reliance on these representations, appellee testified that he "would have opened probate in Houston if I had a good reason to do it."

Appellee does not direct us to any evidence that Baker had bank accounts at the bank for several years before Baker's death. Therefore, Traylor's statements to appellee cannot be the basis for a fraud finding. Furthermore, appellee, by his own admission, had knowledge of the Kolovid account and thus could not have relied on Traylor's statements in deciding whether to open probate in Houston.

At trial, appellee argued that a bank memorandum written on December 4, 1996 regarding the Kolovid and ZLR accounts was evidence of the bank's fraud. That memorandum stated, "At Mr. Traylor's request, please do not give out any information whatsoever regarding the above referenced accounts. If there is an inquiry, do not even let it be known that their [*sic*] is an account under the above referenced names and notify Mr. Traylor immediately." We conclude that the bank's memorandum is not evidence of any affirmative representation by the bank to appellee and, therefore, cannot support his fraud claim.

We sustain appellants' fifth issue.

## CONCLUSION

In light of our ruling on appellant's first and fifth issues, we need not consider appellants' remaining issues. We also need not address appellee's cross-points requesting full recovery on his breach-of-contract claims. We reverse the judgment of the trial court and render judgment that appellee take nothing by his claims against appellants.

---

Supp.2003). Section 448 provides, "The protection here given does not extend to payments made after a financial institution has received written notice from any party able to request present payment to the effect that withdrawals in accordance with the terms of the account should not be permitted...." TEX. PROB.CODE ANN. § 448 (Vernon 1980). The ZLR account was in the name of Rodrigues only. Therefore, it was not a multi-party account, and sections 444, 445, and 448 did not apply.