ASHFORD PARTNERS, LTD., Appellant

v.

ECO RESOURCES, INC., Appellee.

No. 01–09–00809–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 29, 2010.

Sara Murray, for Ashford Partners, Ltd.

Michael P. Cash, for Eco Resources, Inc.

Panel consists of Chief Justice RADACK and Justices BLAND and SHARP.

## MEMORANDUM OPINION

JANE BLAND, Justice.

This is a suit for breach of a lease agreement. TA/Sugar Land–ECO, Ltd. (TASL) entered into a lease agreement with ECO Resources, Inc. (ECO), a firm that provides water and wastewater treatment services to various municipalities. TASL agreed to build a laboratory and office building to suit ECO's needs, and ECO agreed to rent the building for twenty-five years. TASL hired Terramark as the general contractor for the construction contract. After ECO had moved into the building, TASL assigned its interest in the lease to Ashford Partners, Ltd. (Ashford).

When foundation problems appeared, ECO contacted Ashford. Ashford undertook repair efforts and sued Terramark, the general contractor, for, among other things, breach of its construction contract. Terramark joined ECO as a third-party defendant. After Ashford brought a claim for declaratory relief against ECO, ECO counterclaimed for breach of the lease.

This appeal arises out the trial court's entry of judgment based on the jury findings in favor of ECO on its counterclaim. In seeking reversal, Ashford contends that the trial court erred in entering judgment on the jury finding that it failed to comply with the lease and in awarding ECO its attorney's fees because ECO and Ashford were not parties to the lease at the time of the breach. Ashford further contends that the trial court erred in denying its motion for judgment notwithstanding the verdict (jnov) because the evidence proves, as a matter of law, that ECO waived or is estopped from pursuing its breach of con-

tract claim.[1] Finally, Ashford contends that the trial court submitted an incorrect measure of damages to the jury. We conclude that (1) an enforceable contract existed between the parties at the time of the breach, (2) the trial court correctly denied Ashford's motion for jnov, and (3) the trial court submitted a correct measure of damages. We therefore affirm.

## Background

*Lease terms*

The lease contemplated that TASL would oversee construction of the building and build out the interior according to space plans and specifications supplied by ECO, referred to as "Tenant Finish Work." These and other tasks were time-sensitive. Exhibit D to the lease, entitled "Schedule of Critical Dates," set forth "critical dates relating to Lessor and Lessee's respective obligations with respect to construction of the Tenant Finish Work for the Premises."

The schedule specified that the Lessor is responsible for a November 1, 2001 "Estimated Completion Date." The significance of that date stemmed from the fact that the lease would not come into effect until the building was "substantially completed" and TASL had obtained a certificate of occupancy. The lease defined "substantially completed" to mean that construction had been completed "in accordance with the Plan subject only to completion of minor punch card items."

Under the lease, TASL agreed to notify ECO "in writing at least twenty (20) days in advance of the date that [TASL] estimates construction of the Premises will be substantially completed in order for [ECO] to plan and coordinate [its] move-in and occupancy of the premises...." This provision was intended to give ECO time to install telephone lines, computer cabling, and other utilities needed to operate its labs and offices before furnishing the space.

The lease gave TASL the responsibility to determine when the building was "substantially completed," obtain certificates of occupancy, and notify ECO of those developments. It declares: "[TASL] shall notify [ECO], in writing, upon substantial completion of such improvements...." On September 28, 2001, ECO accepted the building as "substantially completed," and the lease term began on October 1, 2001.

The notice of substantial completion from TASL, in turn, triggered ECO's contractual duty to "submit to [TASL] a written punch list of items needing completion or correction." ECO submitted an eight-page punch list to TASL on September 28, 2001. ECO's actions gave effect to the following provision:

> Subject to the Lessor's completion of such punch list items, the taking of possession by [ECO] shall be deemed to conclusively establish that the buildings and other improvements had been completed in accordance with the Plans, that the Premises are in good and satisfactory condition as of when possession was taken, and that Lessee has accepted such buildings and other improvements.

Among other tasks for completion, the punch list submitted by ECO noted the need for caulking between the tilt wall panels under grade. Without that caulking, water would flow underground between the tilt wall panels and under the foundation.

---

1. Ashford also contends ECO cannot recover from Ashford because ECO lacked privity of estate with Ashford. We do not address this issue because neither ECO's live pleadings nor the trial court's judgment refer to a claim or ground of recovery under that theory.

After timely receiving the punch list from ECO, TASL was to "use reasonable efforts to complete such items within thirty (30) days after the receipt of such notice...." On October 24, 2001, TASL transferred the property and assigned its interest in the lease to Ashford.

*Deed of trust assignment*

Also in October, Ashford sent a letter to ECO Resources entitled "Notice of Lease Assignment and Estoppel Certificate," which explained that it intended to assign its interest in the lease by a deed of trust to the Lincoln National Life Insurance Company. Ashford further declared that the "assignment shall not impair or diminish any of [Ashford's] obligations to [ECO] under the Lease...." Following Ashford's agent's signature comes a series of certifications, signed by both ECO and Ashford's guarantor, Southwest Water Company, including certifications that:

- Tenant is in possession and in full occupancy of the Premises ... as of September 28, 2001.... Tenant has accepted the Premises without exception, except for undisclosed defects, and all requirements for the commencement and validity of the Lease, including construction work, if any, required of the Landlord under the terms of the Lease have been satisfied.
- The Lease contains all of the understandings and agreements between Tenant and/or Guarantor and Landlord, and is in existence in full force and effect, without modification, addition, extension, or renewal except as set forth above.
- There are no defaults or breaches under the Lease.

As of October 24, 2001, the date of the lease assignment, TASL had not performed the task of caulking between the tilt wall panels below grade, and Ashford did not undertake it either. When ECO later observed cracking floors, uneven and tilted floors, cracked walls, and other conditions related to foundation problems, Ashford retained structural engineers to investigate. In late 2003, those engineers discovered that large amounts of water had migrated and become trapped under the building's foundation, which caused heaving and differential movement of the foundation and exterior and interior walls. Ashford's expert determined that the influx of water resulted from the failure to caulk the tilt wall panels below grade, the same task ECO specified was left to be done on the punch list.

## Discussion

### I. Breach of contract

Ashford challenges the determination that Ashford breached the lease by contending that (1) ECO lacked standing to pursue its breach of contract claim against Ashford; (2) no enforceable contract existed at the time of the breach as a matter of law; and (3) the evidence is legally insufficient to support a finding that Ashford breached the lease.

As for Ashford's standing challenge, we acknowledge that the question of whether a party is entitled to sue on a contract is sometimes informally referred to as an issue of standing. Nevertheless, because the issue does not affect the court's jurisdiction, it is not truly one of standing, but one on the merits of the contract claim itself. *See Yasuda Fire & Marine Ins. Co. of Am. v. Criaco*, 225 S.W.3d 894, 898 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (citing, among other authorities, *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–54 (Tex.1999)). We therefore construe Ashford's challenges as a single challenge to the legal sufficiency of the evidence supporting the jury finding

that Ashford failed to comply with the lease.

## II. Standard of review

In reviewing Ashford's challenge to the verdict in favor of ECO, we may set aside that verdict as based on legally insufficient evidence only if the evidence at trial would not enable reasonable and fair-minded people to reach the verdict under review. *See City of Keller*, 168 S.W.3d at 827. We review the evidence in the light most favorable to the verdict, crediting evidence that supports the judgment if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.; see Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex.2005) (citing *City of Keller*, 168 S.W.3d at 812).

We also review the trial court's denial of a motion for jnov under a legal sufficiency standard. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005); *Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 207 (Tex.App.-Houston [1st Dist.] 2003, no pet.). When, as here, a party does not submit an affirmative defense to the jury, we review the record to determine whether the issue was disputed or whether the evidence conclusively established the defense. *Baker*, 122 S.W.3d at 207; *see T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222–23 (Tex.1992) (holding that only disputed issues must be submitted to jury). A motion for jnov should be granted when the moving party has established each element of her defense so conclusively that reasonable minds could not differ as to the truth of the controlling facts. *Baker*, 122 S.W.3d at 207; *see Brown v. Zimmerman*, 160 S.W.3d 695, 702 (Tex.App.-Dallas 2005, no pet.).

## III. Contract interpretation

We construe a lease under the well-established rules of contract construction. *See Luccia v. Ross*, 274 S.W.3d 140, 146 (Tex.App.-Houston [1st Dist.] 2008, pet. denied). Our primary concern in interpreting a written contract is to ascertain and to give effect to the parties' intentions as expressed in the document. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005). We consider the entire writing and attempt to harmonize and to give effect to all of the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Id.* at 312. No single provision has controlling effect. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). "In harmonizing these provisions, terms stated earlier in an agreement must be favored over subsequent terms." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). We construe contracts "from a utilitarian standpoint bearing in mind the particular business activity sought to be served" and "will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." *Frost Nat'l Bank*, 165 S.W.3d at 312 (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex.1987)). If, after applying the pertinent rules of construction, the contract can be given a definite or certain legal meaning, it is unambiguous, and we construe it as a matter of law. *Id.*

The basis for the breach here was the failure to "cause the building to be constructed in accordance with the Plans." As Ashford observes, a breach of contract action accrues at the time of the breach. *See Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex.2002). Ashford asserts that the breach occurred when the building was constructed, which occurred before it acquired the lessor's rights under the assignment. ECO, on the other hand, points to

the lessor's obligation to complete the construction or repair of the items on the punch list that ECO submitted to TASL. The trial court's judgment reflects the adoption of ECO's position, under which the lessor could not have failed to comply with its obligation to use reasonable efforts to complete the itemized repairs until, at the earliest, thirty days after ECO submitted the punch list—that is, October 28, 2001, six days after Ashford became TASL's successor-in-interest.

■ We agree with the trial court. The construction Ashford advances would be correct under the facts only if the lessor's construction oversight duties ended when construction was "substantially completed" and did not include the duty— arising after substantial completion—to "use reasonable efforts" to complete the construction or repair of the items that ECO identified on the punch list within thirty days of its submission. "We cannot adopt a construction that renders any portion of a [contract] meaningless, useless, or inexplicable." *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660, 669 n. 27 (Tex.2008); *see Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex.1998). The "completion of . . . punch list items" is a construction-related duty [2] that, under the contract's plain language, existed and had not yet been breached on the date TASL assigned the lease to Ashford. We therefore hold that the evidence is legally sufficient to support the jury's finding.

## IV. Ashford's affirmative defenses

Ashford next contends that ECO waived its breach of lease claim, or, alternatively, is estopped from pursuing it.

### A. Preservation of error

■ Before examining Ashford's waiver and estoppel contentions on their merits, we first consider ECO's claim that Ashford failed to preserve error on its affirmative defenses. To preserve a complaint for appellate review, a party must first present the issue to the trial court. Tex.R.App. P. 33.1(a). The party must show that (1) the complaint was made to the trial court by a timely request, objection, or motion and (2) the trial court ruled on or refused to rule on the request, objection, or motion. *Id.* Accordingly, we address Ashford's legal-sufficiency complaints concerning its affirmative defenses only if it first raised those complaints in (1) moving for a directed verdict; (2) objecting to the submission of the jury question on breach of contract or tendering substantially correct jury questions or instructions on its affirmative defenses; (3) moving for judgment

2. *See, e.g., Tennessee Gas Pipeline Co. v. Technip USA Corp.*, No. 01–06–00535–CV, 2008 WL 3876141. at *2 (Tex.App.-Houston [1st Dist.] Aug. 21, 2008, pet. denied) (mem. op.) (concluding that notice of failure "to remedy past punch list items and other construction defect items" was given too late to come within time period applicable to notice of defects for warranty coverage); *Coastal Chem, Inc. v. Brown*, 35 S.W.3d 90, 94–95 (Tex.App.-Houston [14th Dist.], 2000, pet. denied) (interpreting contract that defines "substantially complete" as "occur[ing] when the plant, unit or facility has been erected in accordance with the Contract and applicable codes and all work necessary for safe start-up has been completed, excluding non-essential punch list work such as painting, insulation and incidental construction, and pre-commissioning activities have been completed. . . . "); *Sw. Progressive Enters., Inc. v. R.L. Harkins, Inc.*, No. 08–00–00294–CV, 2002 WL 358830, at *5 (Tex.App.-El Paso Mar. 7, 2002, no pet.) (mem. op.) ("A punch list is a document created in connection with a walk-through by the owner or architect and contractor. The punch list may include clean up and touch up work, as well as work that is unacceptable in quality to the owner, contractor, or architect.").

notwithstanding the verdict; (4) moving to disregard the jury's answer to a vital fact issue; or (5) moving for new trial. *See Cecil v. Smith,* 804 S.W.2d 509, 510–11 (Tex.1991); *Aero Energy, Inc. v. Circle C Drilling Co.,* 699 S.W.2d 821, 822 (Tex. 1985); *UPS, Inc. v. Tasdemiroglu,* 25 S.W.3d 914, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

■ In its motion to disregard jury findings, or alternatively, for jnov, Ashford contended that ECO waived its breach claim by taking possession of the premises under the lease, pointing to the portion of section 1(A) that declares "the taking of possession by Lessee shall be deemed to conclusively establish that the buildings and other improvements have been completed in accordance with the Plans...." Ashford also raised the estoppel ground, pointing to ECO's acknowledgment that "all requirements for the commencement and validity of the Lease, including all construction work, if any, required of the Landlord under the terms of the Lease have been satisfied." We hold that, to the extent Ashford's waiver and estoppel complaints conform to the jnov grounds it urged in the trial court, Ashford's motion sufficiently preserved them for appeal.[3]

*B. Proof of waiver and estoppel*

■ The Texas Supreme Court concisely set forth the definitions and elements of both waiver and estoppel in *Ulico Casualty Co. v. Allied Pilots Association,* 262 S.W.3d 773 (Tex.2008), declaring that the doctrines of waiver and estoppel are frequently referenced together, but they are different. Waiver is the intentional relinquishment of a right actually

known, or intentional conduct inconsistent with claiming that right. The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. Estoppel, on the other hand, generally prevents one party from misleading another to the other's detriment or to the misleading party's own benefit. *Id.* at 778 (citations omitted). "The doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Ulico Cas. Co.,* 262 S.W.3d at 778 (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515–16 (Tex.1998) (internal quotations omitted)).

■ We first address Ashford's argument that ECO waived its breach claim by taking possession of the premises under the lease. In relying on section 1(A) of the lease, Ashford omits to mention the very language that precludes any finding of waiver based on that term. The complete sentence Ashford relies on reads: "*Subject to the Lessor's completion of such punch list items,* the taking of possession by [ECO] shall be deemed to conclusively establish that the buildings and other improvements had been completed in accordance with the Plans." (emphasis added).

---

3. ECO also suggests that the language in Ashford's pleadings limits the assertion of its waiver and estoppel defenses, but ECO waived any complaint about the limitations of that language when it responded in full to Ashford's waiver and estoppel complaints in its motion to disregard jury findings and for jnov. *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991) (holding that party who allows issue to be tried by consent cannot later raise pleading deficiency for first time on appeal) (citing TEX.R. CIV. P. 67, 90).

The taking of possession, therefore, deemed completion in accordance with the Plans *except* for items specified on the punch list. The jury findings stand exclusively on Ashford's failure to cause completion of a punch list item. The plain language of the lease renders Ashford's position untenable.

Ashford's position on the estoppel certificate language it selectively quotes is equally unmeritorious. Under that provision, ECO certified: "all requirements for the commencement and validity of the Lease, *including construction work, if any, required of the Landlord under the terms of the Lease* have been satisfied." Under a reasonable interpretation of the lease, "construction work ... required of the Landlord under the terms of the Lease" includes the punch list items. Consequently, we hold that the trial court correctly denied Ashford's motion for jnov. Further, because the trial court properly rendered judgment in favor of ECO on its breach of contract claim, the trial court correctly awarded ECO its attorney's fees.

## V. Measure of damages

■ Ashford next contends that the trial court submitted an incorrect measure of damages to the jury. The trial court charged the jury:

> What sum of money, if any, if paid now in cash would fairly and reasonably compensate ECO Resources for the damages, if any, that resulted from Ashford's failure to comply with the Lease? Consider the following elements of damages, if any, and none other:
>
> The difference, if any, between the rent required under the Lease and the rental value of the Leased Space in its actual condition.

Ashford asserts that the trial court should have submitted ECO's damages claim under the measure applicable to defective construction claims-"the reasonable cost of remedying the defects when, as here, they can be remedied without impairing the building as a whole."

■ We disagree. "In a suit for damages on account of the breach of an agreement for the rental of real estate the usual measure of the damages recoverable is the difference between the agreed rental and the reasonable cash market value of the leasehold." *Rainwater v. McGrew*, 181 S.W.2d 103, 105–06 (Tex.Civ.App.-Waco 1944, writ ref'd w.o.m.) (citing, among other cases, *Graves v. Brownson*, 120 S.W. 560 (Tex.Civ.App.1909, writ ref'd)). Like the construction defect theory of recovery, the cases Ashford relies on are inapposite. The cases Ashford cites involve contracts between builders and property owners, not lessor and lessees. *See, e.g., Samuel v. KTVU P'ship*, No. 08–02–00010–CV, 2003 WL 22405384, at *1 (Tex.App.-El Paso Oct. 22, 2003, pet. denied) (mem. op.) ("Texas courts have recognized that the proper measure of damages when the *injury to realty* is repairable is the reasonable cost of repairs necessary to restore the property to its prior condition." (emphasis added)). The nature of the problem that underlies the breach does not change the nature of the parties' contractual relationship. Here, the cost of property repair would inure to the benefit of lessor Ashford—it would not compensate lessee ECO for the difference between the condition of the leased premises as promised and their actual value during the lease term. The market value measure, in contrast, accounts for that difference. *See, e.g., Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) ("The normal measure of damages in a breach of contract case is the benefit of the bargain, the purpose of which is to restore the injured party to the economic position it would have been in had the contract

been performed."). Accordingly, we conclude that ECO was entitled to have the trial court submit that measure of damages.

### Conclusion

We hold that the trial court correctly entered judgment on the jury finding that Ashford failed to comply with the lease because the evidence and the language of the lease support that finding, and Ashford failed to show that it was entitled to its waiver or estoppel affirmative defense as a matter of law. For the same reasons, the trial court correctly awarded ECO its attorney's fees on its breach of contract claim. We further hold that the evidence and the law support the measure of damages submitted to the jury. We therefore affirm the judgment of the trial court.