Robin SINGH d/b/a Testmasters, Appellant,

v.

DUANE MORRIS, L.L.P. and Richard T. Redano, Appellees.

No. 14–09–01073–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 31, 2011.

Rehearing and Rehearing En Banc Overruled May 26, 2011.

See also *Test Masters Educ. Servs., Inc. v. Singh,* 46 Fed.Appx. 227.

Michael Patrick McShan, Daniel J. Sheehan, Cynthia Hollingsworth, John M. Phalen, Jr., Dallas, for appellant.

George M. Kryder III, Dallas, for appellees.

Panel consists of Justices ANDERSON, FROST, and BROWN.

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

Appellant, Robin Singh d/b/a Testmasters, appeals from the granting of two motions for summary judgment in favor of appellees, Duane Morris, L.L.P., and Richard T. Redano. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This is a legal-malpractice case arising from an underlying trademark case involving the use of the name "Testmasters." Appellees represented appellant in that litigation.

Appellant operated an LSAT[1]-preparation business in California under the name Testmasters. Appellant obtained a federally registered trademark for that name.

In 1999 appellant decided to create his own website but discovered that Test Masters Educational Services, Inc. ("TES"), a Houston-based company, was using www.testmasters.com as its domain name. TES offered preparation courses for the SAT[2] and professional-licensing exams and operated only in Texas. Appellant sent TES a demand letter claiming that its use of the domain name infringed appellant's trademark rights and demanding that TES relinquish the domain name. TES responded to appellant's demand letter by filing suit in Houston federal district court seeking a declaration of non-infringement. TES also asserted in the alternative that appellant's trademark was invalid. Appellant retained appellees to represent him in this litigation, which has become known as Testmasters I.

Since the nature of appellant's mark is at the heart not only of Testmasters I, but also the current litigation, a brief explanation of the types of marks entitled to trademark protection under the Lanham Act[3] is appropriate. "A trademark is defined in 15 U.S.C. § 1127 as including 'any word, name, symbol, or device or any combination thereof' used by any person 'to identify and distinguish his or her goods, ... from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992). Marks are usually classified into the following categories: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful.[4] *Id.* "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id.* In contrast, generic marks are not entitled to trademark protection. *Id.* In addition, because a descriptive mark is not inherently distinctive, it is not entitled to trademark protection unless it has become distinctive of the applicant's goods in commerce. *Id.* at 769, 112 S.Ct. 2753. This acquired distinctiveness is generally referred to as "secondary meaning." *Id.*

1. LSAT is an acronym standing for Law School Aptitude Test.

2. SAT is an acronym standing for Scholastic Aptitude Test.

3. Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*

4. A generic term is the name of a particular genus or class of which an individual article is a member. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 241 (5th Cir. 2010). A generic mark connotes the basic nature of articles or services rather than the more individualized characteristics of a particular product. *Id.* These include terms such as aspirin and cellophane. *Id.* A descriptive term identifies a characteristic or quality of an article or service, such as its color, odor, or function. *Id.* An example would be Vision Center for a business offering optical services. *Id.* A suggestive term suggests, rather than describes, some particular characteristic of the goods or services and requires the consumer to use imagination in order to draw a conclusion as to the nature of the goods or services. *Id.* An example of a suggestive term is Coppertone. Finally, arbitrary or fanciful terms bear no relationship to the products or services to which they are applied. Examples include Kodak for photographic supplies and Ivory for soap products. *Id.*

In Testmasters I, the jury found that appellant's mark was descriptive but that it had acquired secondary meaning. The jury also found that TES had infringed appellant's mark but that TES was immune from liability as an innocent prior user in Texas. The federal district court upheld the validity of appellant's federal trademark registration but ordered the Patent and Trademark Office to modify appellant's trademark registration to allow TES the right to use the mark exclusively in Texas. The district court also ordered TES to transfer its ownership of the www.testmasters.com domain name to appellant. Both sides appealed to the Fifth Circuit Court of Appeals. The Fifth Circuit reversed, holding that, as a matter of law, there was insufficient evidence of secondary meaning. *Test Masters Educ. Servs., Inc. v. Singh,* 46 Fed.Appx. 227 (5th Cir.2002). The Fifth Circuit vacated the federal district court's order compelling TES to give the domain name to appellant. Finally, the Fifth Circuit remanded the case to the federal district court "for entry of an order that [appellant's] trademark is invalid." *Id.* at *5.

Originally, appellant operated his LSAT-preparation business as a sole proprietorship. Deciding to change how he conducted the Testmasters business, appellant formed Robin Singh Educational Services, Inc. ("Singh Corporation") a Subchapter S corporation.[5] In conjunction with the formation of Singh Corporation, appellant ceased doing business as a sole proprietorship on December 31, 2002, and beginning January 1, 2003, the newly established

Singh Corporation began conducting the Testmasters business. From that point in time, all revenue and expenses for the Testmasters business were earned or incurred exclusively through Singh Corporation.

After the Fifth Circuit reversed the judgment in his favor, appellant filed a legal-malpractice case against appellees in state district court in Harris County. Appellant alleged that appellees committed malpractice in their handling of appellant's trademark case in Testmasters I. According to appellant, appellees negligently failed to argue that appellant's Testmasters mark was suggestive, which would entitle it to automatic trademark protection. In addition, appellant alleged that appellees committed malpractice when they failed to introduce sufficient evidence to prove that appellant's mark had acquired secondary meaning. According to appellant, this failure to introduce sufficient evidence of secondary meaning resulted from appellees' fundamental misunderstanding of which party had the burden of proof on the issue of secondary meaning.

Appellees removed the case to federal district court where they eventually moved for summary judgment on appellant's claims, which the district court granted. On appeal, the Fifth Circuit determined there was no federal court jurisdiction, vacated the trial court's judgment, and dismissed the case.[6] *Singh v. Duane Morris,* 538 F.3d 334 (5th Cir.2008).

---

5. "Under Subchapter S of the Small Business Corporation Act, 26 U.S.C.A. §§ 1371–79, a corporation may elect a tax status which protects the earnings and profits of the corporation from conventional corporate tax rates." *Suburban Utility Corp. v. Public Utility Commission of Texas,* 652 S.W.2d 358, 363 (Tex. 1983).

6. Both sides in this appeal spent much time in their briefs addressing the federal district court's orders in the removed malpractice case. However, we note that since the Fifth Circuit determined there was no federal jurisdiction, all of the federal district court's orders, as well as the final judgment, are void and have no legal significance. *See Shirley v. Maxicare Tex., Inc.,* 921 F.2d 565, 568 (5th

Appellant re-filed his malpractice case in state district court in Harris County. Appellant again alleged that appellees were negligent in their handling of his case in Testmasters I. Appellant sought two categories of damages. First, appellant sought to recover lost profits allegedly incurred after January 1, 2003. Second, appellant sought to recover the attorney's fees allegedly paid to several different law firms retained for the various lawsuits filed in the aftermath of the Fifth Circuit's decision in Testmasters I. According to appellant, Singh Corporation was forced to retain these firms in an effort to minimize the damage allegedly resulting from appellant's loss of the Testmasters trademark and ownership of the www.testmaster.com domain name. All of the legal fees appellant sought to recover were incurred after January 1, 2003.

Appellees eventually filed six motions for summary judgment in this re-filed malpractice lawsuit. We need only specifically mention three. Initially, appellees filed "Defendants' Motion for Summary Judgment (No. 1) for Plaintiff's Lack of Standing." In this first motion, appellees argued they were entitled to summary judgment because appellant "cannot recover in his individual capacity for damages allegedly incurred by Robin Singh Educational Services, Inc. . . ., even though he is its sole shareholder." On November 5, 2009, the trial court denied this motion.

Next, appellees filed "Defendants' No–Damages Motion for Summary Judgment (No. 3)." In this motion, in addition to other grounds, appellees again asserted they were entitled to summary judgment because all of appellant's "claimed damages and purported lost profits, if any, were incurred by Singh Corporation and

are not recoverable by [appellant], individually." On November 5, 2009, the trial court entered an order on "Defendants' No–Damages Motion for Summary Judgment (No. 3)" that (1) granted the motion in part and dismissed appellant's claim for alleged lost profits; (2) denied the motion in part with respect to appellant's claim for alleged attorney's fees incurred as a result of appellant's negligence; and (3) deferred ruling on the question of whether appellant had "standing and/or capacity to recover damages incurred by Robin Singh Educational Services, Inc." Then, on November 30, 2009, the trial court entered a second order on "Defendant's No–Damages Motion for Summary Judgment (No. 3)" that was identical to the first order except the trial court now granted the motion "in part on the grounds that [appellant] does not have standing and/or capacity to recover damages incurred by Robin Singh Educational Services, Inc."

Finally, in "Defendants' Cross Motion for Summary Judgment on Affirmative Defenses," appellees moved for summary judgment on various affirmative defenses including: (1) appellant's failure to present additional evidence of secondary meaning as part of a Federal Rule of Civil Procedure 60(b) motion after the Fifth Circuit reversed the judgment in Testmasters I; (2) collateral estoppel; and (3) waiver. On December 2, 2009, the trial court granted "Defendants' Cross Motion for Summary Judgment on Affirmative Defenses." This appeal followed.

### DISCUSSION

In his first three issues on appeal appellant asserts the trial court erred when it granted appellees' motions for summary

Cir.1991) (holding that if a federal court does not possess subject-matter jurisdiction over a

dispute, any order it makes is void).

judgment. In his final issue, appellant asserts the trial court abused its discretion when it ordered him to produce the complete files of the attorneys hired following the Fifth Circuit's decision in Testmasters I. We need only address appellant's first issue.

## I. The standard of review.

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). In a traditional motion for summary judgment, the movant has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true and the reviewing court makes all reasonable inferences and resolves all doubts in the non-movant's favor. *Id.* at 548–49. If there is no genuine issue of material fact, summary judgment should issue as a matter of law. *Haase v. Glazner,* 62 S.W.3d 795, 797 (Tex.2001). A defendant who conclusively negates at least one of the essential elements of a plaintiff's cause of action is entitled to a summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex. 2004). Once a defendant establishes its right to summary judgment, the burden then shifts to the plaintiff to come forward with competent controverting summary judgment evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995).

## II. Can appellant recover alleged damages incurred by Singh Corporation?

### A. The elements of a legal-malpractice cause of action.

■ To prevail on a legal-malpractice claim, a plaintiff must show that (1) the attorney owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damages occurred. *Alexander v. Turtur & Assoc., Inc.,* 146 S.W.3d 113, 117 (Tex.2004). As discussed above, "Defendant's No–Damages Motion for Summary Judgment (No. 3)" sought to negate the damages element of appellant's malpractice claim.

### B. Analysis.

■ It is undisputed that all of appellant's alleged damages in this malpractice suit were incurred by Singh Corporation after January 1, 2003. In his first issue, appellant contends this undisputed fact does not impact the viability of his malpractice claim against appellees. In support of this contention, appellant asserts that since Singh Corporation is a Subchapter S corporation and he is the sole shareholder, this court can ignore the existence of the corporation, a separate legal entity, and determine that he was "harmed directly by the actions of [appellees] and he has standing to recover damages." We disagree.

The Texas Supreme Court has held that an individual shareholder, even a sole shareholder such as appellant, has no standing to recover personally for damages incurred by the corporation. *See Wingate v. Hajdik,* 795 S.W.2d 717, 719 (Tex.1990) ("Ordinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to the stockholders.").

■ A corporation is a separate legal entity from its shareholders, officers, and

directors. *Sparks v. Booth*, 232 S.W.3d 853, 868 (Tex.App.-Dallas 2007, no pet.). A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations. *Id.* However, another bedrock principle of corporate law is that a corporation cannot be used when it benefits the stockholders and be disregarded when it is to the advantage of the organizers to do so. *See Eastwood Model Market v. State*, 359 S.W.2d 294, 296 (Tex. Civ.App.-Austin 1962), *aff'd*, 365 S.W.2d 781 (Tex.1963); *see also Adams v. Big Three Industries, Inc.*, 549 S.W.2d 411, 413 (Tex.App.-Beaumont 1977, writ ref'd n.r.e.) ("It is obvious that Adams, Jr. deliberately chose to operate his business as a corporation, and we are of the opinion that it would be inequitable now to allow him to recover attorney's fees as an individual.").

 The fact Singh Corporation is a Subchapter S corporation does not change this bedrock principle. Subchapter S status does not determine who owns the corporation's earnings. *Thomas v. Thomas*, 738 S.W.2d 342, 344 (Tex.App.-Houston [1st Dist.] 1987, writ denied). Instead, Subchapter S status merely provides an alternative method to tax the corporation's income. *Id.* "The shareholder in a Subchapter S corporation has no greater rights over corporate property than a shareholder in any other corporation." *Id.* Appellant has not cited any authority holding otherwise. Indeed, the one case appellant relies on, *Kiepfer v. Beller*, 944 F.2d 1213 (5th Cir.1991), is distinguishable.

In *Kiepfer*, the plaintiff, a doctor, conducted his business through a professional association. Kiepfer, in his individual capacity, sued three other doctors and an insurance exchange for tortious interference with his contracts with his patients as well as violations of the Sherman Antitrust

Act. *Id.* at 1215–16. The jury returned verdicts against two of the doctors and the insurance exchange on both of Kiepfer's causes of action and awarded him damages. *Id.* at 1217. The doctors settled before judgment was entered. The insurance exchange moved for judgment notwithstanding the verdict on both causes of action, which the trial court granted. *Id.* Among the grounds asserted by the insurance exchange was the argument that the only evidence of damages were to the professional association, not Kiepfer individually. *Id.* at 1222. On appeal, the Fifth Circuit, concluding there was no evidence of anti-competitive effect, affirmed as to the antitrust allegations. However, the Fifth Circuit reversed and reinstated the jury's verdict against the insurance exchange on the tortious-interference claim. *Id.* In response to the insurance exchange's damages argument, the Fifth Circuit held that evidence of Kiepfer's mental anguish supported the jury's verdict. *Id.* As for the introduction of evidence of damages to the professional association, the Fifth Circuit held:

> The jury did not award Dr. Kiepfer damages suffered by his professional association. The jury awarded Dr. Kiepfer the damages he personally suffered as a result of the defendants' actions. The fact that evidence of the damages to the professional association was introduced to prove damage to his business—which damage must be shown in order to prevail in an antitrust action—and may have been used by the jury to assist in determining what damages had accrued to Dr. Kiepfer personally, does not transform the award into one for damages to the professional association.

*Id.* Here, there is no allegation by appellant that he suffered mental anguish as a result of appellees' actions or inactions. Instead, the only damages he sought to

recover were suffered by Singh Corporation. Therefore, his reliance on *Kiepfer* is misplaced.

We hold the trial court did not err when it granted "Defendant's No–Damages Motion for Summary Judgment (No. 3)." We further hold that by doing so, the trial court correctly determined that appellant did not have standing to recover any of the damages he sought and thereby disposed of the entire case. *See Swank v. Cunningham*, 258 S.W.3d 647, 661 (Tex.App.-Eastland 2008, pet. denied) ("[A] shareholder who seeks individual redress based on allegations concerning wrongs done to a corporation lacks standing.") We overrule appellant's first issue on appeal.

### CONCLUSION

Having overruled appellant's first issue on appeal, we affirm the trial court's summary judgment.[7]

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting.

Appellant Robin Singh has standing to seek damages allegedly caused by the negligence of his former attorneys, appellees Richard Redano and Duane Morris, L.L.P. (hereinafter collectively the "Attorneys"), and the trial court has subject-matter jurisdiction over these claims. Because this court reaches the opposite conclusion, I respectfully dissent.

Singh retained Redano, then a partner in Duane Morris, L.L.P., to represent him in trademark-infringement litigation. Singh claims that the case was lost due to the Attorneys' negligence. After the actions and omissions alleged to constitute

negligence occurred, Singh incorporated his business as Robin Singh Educational Services, Inc. ("Singh Services"). Following this incorporation on January 1, 2003, Singh filed suit against the Attorneys to recover the damages he claims to have suffered as a result of their alleged negligence. Singh alleges that the Attorneys' negligence severely damaged his business and that he "has suffered and continues to suffer damages in the form of lost revenue and profits associated with consumers being confused out of taking his TESTMASTERS course." Singh also alleges that, as sole shareholder of Singh Services, a subchapter S corporation, all lost profits of Singh Services are losses suffered directly by Singh individually. Singh did not limit the damages alleged in his petition to losses incurred by Singh Services or to losses incurred after Singh Services's incorporation.

Today's decision is premised on the majority's conclusions that (1) all of Singh's alleged damages are based on losses incurred by Singh Services and (2) Singh cannot recover in his individual capacity based on alleged damages to Singh Services. If the majority's conclusions were correct, then Singh's negligence claims would fail on the merits. But these conclusions do not support the majority's determination that Singh has no standing to assert his negligence claims. *See Heartland Holdings, Inc. v. U.S. Trust Co. of Tex. N.A.*, 316 S.W.3d 1, 7 (Tex.App.-Houston [14th Dist.] 2010, no pet.); *Ashford Partners, Ltd. v. ECO Res., Inc.*, No. 01–09–00809–CV, 2010 WL 2991118, at *3 (Tex.App.-Houston [1st Dist.] Jul. 29, 2010, pet. filed) (mem.op.). If Singh lacked standing to seek recovery of the alleged

---

7. Because we have overruled appellant's first issue on appeal and by doing so have affirmed the trial court's granting of summary judgment as to appellant's entire case against appellees, we need not address appellant's remaining issues on appeal. Tex.R.App. P. 47.1.

negligence damages, then the trial court would lack subject-matter jurisdiction over Singh's claims. *See Heartland Holdings, Inc.*, 316 S.W.3d at 7; *Ashford Partners, Ltd.*, 2010 WL 2991118, at *3. But any inability of Singh to recover damages incurred by Singh Services would go to the merits of Singh's claims rather than to the trial court's jurisdiction. *See Heartland Holdings, Inc.*, 316 S.W.3d at 7; *Ashford Partners, Ltd.*, 2010 WL 2991118, at *3. For this reason, this court should not dispose of this case on jurisdictional grounds.

The majority cites an opinion of the Supreme Court of Texas for the proposition that the sole shareholder of a corporation "has no standing" to recover personally for damages incurred by the corporation; but, in the cited case the high court never uses the word "standing" and does not conclude that the trial court lacked jurisdiction. *See Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex.1990). Instead, the high court states that the shareholder "cannot recover damages personally for a wrong done solely to the corporation" and that the shareholder has "no separate and independent right of action." *Id.* By treating this issue as one of standing and jurisdiction, the majority misses the mark and reaches the wrong conclusion.

Singh does not seek to recover personally for wrongs done to Singh Services; rather, Singh seeks to recover for wrongs he claims to have suffered at the hands of the Attorneys, whose negligence he alleges caused him to suffer the damages. Singh asserts no claims for or on behalf of Singh Services, nor does Singh seek to recover damages that flowed from a wrong done to the corporation. Singh, not Singh Services, was the client. If Singh Services had been the client, any claims for injury to the corporation would be vested in Singh Services, as distinguished from Singh. But a claimed injury to the corporation is not the scenario under review. This key distinction is fundamental to the proper resolution of the issue the court decides today.

The majority makes a jurisdictional disposition based on a merits analysis. The former is improper and the latter is premature. To succeed on a claim in his individual capacity to recover damages he claims to have suffered as a result of the Attorneys' alleged negligence, Singh must discharge the burden to prove his damages. But whatever problems Singh might encounter in proving his damages, they are not jurisdictional.

This court errs in overruling Singh's first issue and in failing to address the remaining issues. The trial court erred when it granted summary judgment based on lack of standing. This court errs in concluding that Singh does not have standing to recover any of the damages he seeks and in disposing of the entire case on this basis.